**Byron WARE, Petitioner,**

v.

**MORGAN COUNTY SCHOOL DISTRICT NO. RE–3, Respondent.**

**No. 86SC73.**

Supreme Court of Colorado,
En Banc.

Jan. 11, 1988.

Rehearing Denied Feb. 8, 1988.

Hobbs, Bethke & Associates, Larry F. Hobbs, William P. Bethke, Denver, for petitioner.

Epperson, McClary, Zorn & McClary, Edward L. Zorn, Fort Morgan, for respondent.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *Ware v. Morgan County School Dist. No. RE-3*, 719 P.2d 351 (Colo.App.1985), which upheld an order of the Board of Education of Morgan County School District No. RE-3 (school board) dismissing the petitioner, Byron Ware, from his position as a tenure teacher with the school district. The court of appeals held that "insubordination," which is one of the statutory grounds for dismissal under section 22-63-116 of the Teacher Employment, Dismissal and Tenure Act of 1967, §§ 22-63-101 to -118, 9 C.R.S. (1973 and 1987 Supp.) (Teacher Tenure Act), does not require a showing of a constant or persistent course of defiant conduct, but rather may be established by a single act of "willful failure or refusal to obey reasonable orders of a superior who is entitled to give such orders." 719 P.2d at 352. The court of appeals also held that the school board did not violate section 22-63-117(10), 9 C.R.S. (1983 Supp.),[1] when it accepted the hearing officer's findings of evidentiary fact but, contrary to the hearing officer's recommendation of retention, ordered Ware's dismissal for insubordination. Finding no reversible error, we affirm the judgment.

## I.

Byron Ware was employed as a music teacher, with tenure status since 1973,[2] in the Morgan County School District. His duties included serving as band director for the Fort Morgan High School band, and

---

1. Because the act of insubordination on which the order of dismissal was based occurred on September 26, 1983, and the administrative proceedings before the hearing officer and the school board occurred in 1984, we cite to the 1983 version of section 22-63-117.

2. Section 22-63-102(11), 9 C.R.S. (1973), defines a "tenure teacher" as "any teacher who has acquired tenure status in a school district pursuant to law." Continuous employment in a school district for three full academic years,

teaching instrumental music at elementary and junior high levels within the district. Most of Ware's teaching time was spent at Fort Morgan High School in connection with his duties as band director.

On March 27, 1984, the school board accepted for review charges of insubordination, which, as pertinent here, stated as follows:

> That Byron Ware, a tenured teacher ..., be dismissed due to insubordination, which results from Mr. Ware's failing or refusing to comply with a directive delivered to him on or about October 27, 1981, wherein Dr. James Raine, the Superintendent of Schools of said District at the time, commanded Mr. Ware to "discontinue the use of profanity in the presence of students", and "control your emotions when communicating with parents and students, and act in a professional manner."

> Mr. Ware is charged with failing to comply with the above personnel directive by his continued use of profanity in the presence of his students. Particularly, Mr. Ware used extreme vulgarities and profanities in addressing a student during his band class held on or about September 26, 1983.[3]

After the charges were filed with the school board, a three-day hearing, commencing on January 30, 1984, was conducted by a hearing officer pursuant to section 22–63–117(5), 9 C.R.S. (1983 Supp.).[4] Robert Lucas, the principal at Fort Morgan High School, testified that in the fall of 1981 the administrative staff of the district received complaints from parents about Ware's use of offensive language in addressing students. Lucas and Dr. Raine, the superintendent of schools, met with Ware about these complaints, and in October 1981 Dr. Raine issued a written directive to Ware instructing him to discontinue his use of profanity in the presence of students, to control his emotions when communicating with students, and to act at all times in a professional manner.

It was uncontroverted that a verbal confrontation occurred between Ware and one of his students on September 26, 1983, during band rehearsal, although there was substantial disagreement over the exact language used by Ware on that occasion. The evidence indicated that on that date Ware instructed the students at the beginning of band rehearsal to place their music on their stands. About ten minutes later, Ware observed a sophomore student, D.M., looking at the music of the person sitting next to him. When Ware asked D.M. where his music was, D.M. reached to the floor for his music, whereupon Ware told

---

plus reemployment for a fourth academic year, is generally required for tenure status. § 22–63–112, 9 C.R.S. (1973 & 1987 Supp.).

**3.** The written charges of insubordination also included Ware's alleged violation of school district procedures concerning the use of purchase orders for school equipment and his refusal to observe a school district policy prohibiting school meetings and practice sessions on Wednesday evenings. While the evidence showed that Ware in September 1982 used two purchase orders approved for certain items in the amounts of $15.00 and $5.92 to obtain other items for the amounts of $16.92 and $2.24, and that Ware at times ordered items on an "on approval basis" and returned the items after inspection, the hearing officer found that Ware did not consciously violate the district's purchase order procedures and hence his conduct did not amount to insubordination. With respect to the charge of violating the school district's policy of not scheduling meetings or practice sessions on Wednesday evenings, the evi-

dence showed that on a Wednesday evening in September 1981 Ware was observed conducting a band practice at 6:30 p.m. The hearing officer, however, found that Ware's conduct in that incident was inadvertent and did not amount to insubordination. Ware was also charged with immorality as a result of his use of offensive language on September 26, 1983. The hearing officer dismissed that charge at the close of the school board's case. Since the school board ordered Ware's dismissal solely on the basis of insubordination arising out of the incident on September 26, 1983, we limit our discussion of the evidence to that charge only.

**4.** In 1987, the General Assembly amended section 22–63–117 of the Teacher Tenure Act to reflect the change in designation from "hearing officer" to "administrative law judge." Ch. 172, sec. 61, § 22–63–117, 1987 Colo.Sess.Laws 936, 957–59.

D.M. to follow him outside. Ware took D.M. by the arm and led him outside the building where Ware verbally berated D.M.

According to D.M., Ware stated that he (D.M.) was a disgrace to the band, that he was a "fucking asshole" and a "son of a bitch," that he could get his "fucking asshole out of his classroom," that he was "going to flunk this quarter anyway," and that he did not have a "snowball['s] chance in hell of passing." After the confrontation with Ware, D.M. broke down and cried and then returned to band practice.

When Ware was berating D.M., several female students, who were in the color guard and marched with the band, were standing nearby and heard some of Ware's remarks, including his reference to D.M. as a "fucking asshole." They testified that they were upset by Ware's language, and one of them encouraged D.M. to report the incident to the school administration. On the following day D.M. reported the incident to the assistant principal, Richard Porter, who held a meeting on September 28, 1983, with Ware and D.M. The assistant principal testified that he did not attempt to pin down D.M. as to the exact words used by Ware other than to determine that the words were worse than "hell" and "damn." During the meeting Ware stated to the assistant principal that he used the words "hell" and "damn" but did not recall using any stronger language than that.

Ware offered the following version of his confrontation with D.M. He testified that D.M. had been causing problems in the band prior to the incident of September 26, 1983, and that when he led D.M. outside the building on that day he reprimanded him about a number of things. Ware admitted that he told D.M. that he was a disgrace to the band and said to him: "Unless you get your ass in gear I'm going to kick you out of the band." Ware also acknowledged using the following phrases: "Damn it, I'm madder than hell at you," and "You don't have a snowball's chance in hell of passing band." Ware, however, denied using the other offensive language reported by D.M.

Following the hearing, the hearing officer issued a written ruling on March 1, 1984. In his ruling the hearing officer stated that he was construing the term "insubordination" to mean "a conscious disobedience of a known and understood order from a lawful authority," rather than "an inadvertent or even careless failure to follow a directive." The hearing officer then made the following findings of evidentiary fact:

During the fall of 1981, the District administration received complaints from some parents in the district concerning the Teacher's use of profanity in addressing students. In a conference with the then Superintendent of Schools relating to these complaints, the Teacher acknowledged that he used the words "hell" and "damn" in the presence of students, but denied using any words considered stronger. Following this meeting, the Superintendent issued a directive instructing the Teacher not to use profanity in dealing with students. No copy of the written directive was offered in evidence, but it was not disputed that a directive was issued to the Teacher instructing him to discontinue use of profanity in the presence of students, to control his emotions when communicating with parents and students, and to act in a professional manner.

Acknowledging that the evidence was in conflict with respect to the exact words spoken by Ware to D.M. during the confrontation on September 26, 1983, the hearing officer resolved this conflict by adopting D.M's version of the conversation as more accurate and found as follows:

Once outside [the building], the Teacher began berating D.M. for failing to have and use his own music, not having his music memorized, and failure to be prompt and properly dressed for performances. The Teacher's remarks were spoken loudly enough to be heard by others nearby, including some flag girls

who had come out to rehearse. During the course of this conversation, the Teacher at least once told D.M. to "get his fucking ass out of the band," referred to him as "you son-of-a-bitch," and told him that unless he changed his attitude he did not have a "snowball's chance in hell" of passing band. The Teacher also called D.M. a "disgrace to the band."

The hearing officer also determined that Ware's use of language during this incident violated the 1981 directive instructing him to discontinue using such language in speaking to students, that Ware's violation of the directive was neither inadvertent nor accidental, and that he was guilty of insubordination. Noting that Ware was well respected for his work within the school district, and that his verbal confrontation with D.M. was a "single incident of poor judgment and unprofessional conduct," the hearing officer concluded that it would be unreasonable to recommend Ware's dismissal and consequently recommended that he be retained.

On March 28, 1984, the school board reviewed the hearing officer's findings and recommendation and adopted a resolution which stated, in pertinent part, as follows:

The Board of Education accepts the hearing officer's findings that in October of 1981, after incidents of the use of profanity by the teacher in the presence of students and complaints by parents, the Superintendent of Schools issued a written directive to the teacher directing him to discontinue use of profanity in the presence of students, to control his emotions when communicating with parents and students and to act in a professional manner; that on September 26, 1983, the teacher used extreme profanity in reprimanding a student, which profanity was

overheard by other students in the area; and that the incident of September 26, 1983, was in violation of the directive of October, 1981, was not inadvertent or accidental and constituted an act of insubordination.

The school board, however, rejected the hearing officer's recommendation of retention for the following reason:

The Board finds that under the standards of the community which it represents and in light of the educational and professional standards which it has implemented, and taking into account the aggravated nature of the incident which was in direct contravention of a written directive, there is sufficient cause to warrant the dismissal of the teacher.

The school board entered an order of dismissal, and Ware appealed to the court of appeals, which affirmed the order of dismissal. The court of appeals held that teacher insubordination may be established by a willful failure or refusal to obey the reasonable order of a superior on a particular occasion,[5] and then concluded that the evidence supported the hearing officer's findings of evidentiary fact and that on the basis of these evidentiary findings the school board could properly conclude that Ware had been guilty of insubordination. *Ware*, 719 P.2d at 352. The court also held that the school board was not bound by either the hearing officer's findings of ultimate fact or the hearing officer's recommendation of retention, and that the school board acted within its authority in ordering Ware's dismissal. *Id.* We thereafter granted Ware's petition for certiorari to consider two issues: (1) whether teacher-insubordination can be established by a single incident of willful disobedience of a lawful order of a superior; and (2) whether the school board violated section 22–63–

**5.** In rejecting Ware's argument that insubordination requires a showing of a persistent course of willful defiance, the court of appeals refused to follow the definition of insubordination which it adopted in *Thompson v. Board of Educ.*, 668 P.2d 954 (Colo.App.1983). In *Thompson,* the court of appeals adopted the following definition of insubordination taken from *Ray v. Minneapolis Bd. of Educ.,* 295 Minn. 13, 202 N.W.2d 375 (1972): "a constant or continuing intentional refusal to obey a direct or implied order, reasonable in nature, and given by and with proper authority."

117(10), 9 C.R.S. (1983 Supp.), when it accepted the hearing officer's findings of evidentiary fact but nevertheless dismissed Ware over the hearing officer's recommendation of retention.

## II.

■ We initially address whether "insubordination," which is a statutory ground for dismissal under the Teacher Tenure Act, see § 22–63–116, 9 C.R.S. (1987), requires a showing of a constant or persistent course of defiant conduct or, as the court of appeals held, may be established by a single act of willful failure or refusal to obey the reasonable order of a lawful superior on a particular occasion. Courts have taken varied approaches in construing the term "insubordination" in the context of teacher-disciplinary proceedings. Some courts have defined that term simply as the willful or intentional refusal by a teacher to obey a reasonable order or directive of a lawful superior. E.g., Aaron v. Alabama State Tenure Comm'n, 407 So.2d 136 (Ala. Civ.App.1981); Christopherson v. Spring Valley Elementary School Dist., 90 Ill. App.3d 460, 45 Ill.Dec. 866, 413 N.E.2d 199 (1980); Crump v. Board of Educ., 79 N.C. App. 372, 339 S.E.2d 483, review denied, 317 N.C. 333, 346 S.E.2d 137 (1986). Other courts have construed "insubordination" to mean that the teacher's refusal to obey a reasonable order of a lawful superior must be manifested by a constant or persistent course of willful defiance. E.g., Ray v. Minneapolis Bd. of Educ., 295 Minn. 13, 202 N.W.2d 375 (1972); Sims v. Board of Trustees, 414 So.2d 431 (Miss.1982); Clarke v. Board of Educ., 105 A.D.2d 893, 482 N.Y.S.2d 80 (1984); Board of Trustees v. Holso, 584 P.2d 1009 (Wyo.1978). At least one other court seems to have considered the additional element of a constant or persistent course of willful defiance as a factor to be considered in the imposition of discipline. See Rust v. Clark County School Dist., 100 Nev. 372, 683 P.2d 23 (1984).

In our view, the term "insubordination," as used in section 22–63–116 of the Teacher Tenure Act, imports a willful or intentional refusal to obey a reasonable order of a lawful superior on a particular occasion. See Black's Law Dictionary 720 (5th ed. 1979). While a constant or persistent course of willful defiance will certainly establish insubordination, and while such constant or persistent defiance is also an appropriate consideration in regard to the appropriate sanction, we are not persuaded that this additional element is an indispensable element to any ultimate finding of "insubordination" under the Teacher Tenure Act. On the contrary, we are satisfied that the term "insubordination," as used in section 22–63–116, 9 C.R.S. (1983 Supp.), is broad enough to include not only a constant or persistent course of willful defiance of reasonable orders of a lawful superior, but also, as here, a particular instance of willful disobedience of a reasonable order directing the teacher to refrain from engaging in a particular form of abusive or offensive conduct toward students. Cf. Mavis v. Board of Educ., 563 S.W.2d 738 (Ky.App.1977) (school board's dismissal of teacher for insubordination upheld where teacher administered corporal punishment to student after being ordered to cease all physical punishment); Clayton v. Board of Educ., 73 A.D.2d 765, 423 N.Y.S.2d 548 (App.Div.1979) (same), appeal dismissed, 49 N.Y.2d 888, 405 N.E.2d 235, 427 N.Y. S.2d 992, appeal dismissed, 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11, appeal dismissed, 49 N.Y.2d 916, 405 N.E.2d 713, 428 N.Y.S.2d 1029 (1980). By interpreting "insubordination" to include the willful or intentional disobedience of a reasonable order on a particular occasion, we provide the school board with the necessary latitude to determine whether, in light of community standards and subject to judicial review, the teacher's conduct on the occasion in question was sufficiently serious or aggravated to warrant an ultimate finding of insubordination and the serious sanction of dismissal. See Ricci v. Davis, 627 P.2d 1111, 1118 (Colo.1981).

■ In this case, we are satisfied that the school board's ultimate finding of in-

subordination and its order of dismissal were fully warranted by the hearing officer's findings of evidentiary fact. The hearing officer found that in the fall of 1981 the superintendent of schools issued an order to Ware specifically directing him not to use profanity when dealing with his students. The hearing officer also found that notwithstanding this order, Ware used extremely offensive language in berating his student, D.M., during the course of band rehearsal, and did so within hearing distance of other students. These findings, in turn, were substantially supported by the evidence submitted on behalf of the school district at the administrative hearing before the hearing officer. It would be inappropriate for this court to substitute its own judgment in place of the school board's "experienced appraisal of the harm inflicted on the school community" by a particularly egregious instance of teacher misconduct. *Id.* at 1118.

### III.

We now consider whether the school board violated section 22–63–117(10), 9 C.R.S. (1983 Supp.), when it accepted the hearing officer's findings of evidentiary fact but nonetheless ordered Ware's dismissal for insubordination over the hearing officer's recommendation of retention. Ware argues that the school board erred because the hearing officer's determination that dismissal was not warranted was the equivalent of a finding of ultimate fact and, in Ware's view, the 1979 amendment to section 22–63–117(10), which pertains to the administrative proceedings in this case, prohibits the school board from rejecting the hearing officer's findings of ultimate fact as long as those ultimate findings are supported by the hearing officer's findings of evidentiary fact. We find no merit in Ware's argument.

In 1979, section 22–63–117(10), 9 C.R.S. (1983 Supp.), was amended to state, in pertinent part, as follows:

The board of education shall review the hearing officer's findings of fact and rec- ommendations, and it shall enter its written order within thirty days after the date of the hearing officer's findings and recommendations. The board shall take one of the three following actions: The teacher be dismissed; the teacher be retained; or the teacher be placed on a one-year probation; *but the board shall make a conclusion, giving its reasons therefor, that the hearing officer's findings of fact are not supported by the record made before the hearing officer if it dismisses the teacher over the hearing officer's recommendation of retention, and such finding shall be included in its written order.*

Ch. 202, sec. 3, § 22–63–117(10), 1979 Colo. Sess.Laws 801, 803 (emphasis added). In *Blaine v. Moffat County School Dist. RE No. 1,* 748 P.2d 1280 (Colo.1988), announced contemporaneously with this opinion, we interpreted the 1979 amendment to section 22–63–117(10) in the context of the Teacher Tenure Act and our prior decisions construing that act. We there stated:

Recognizing that the 1979 amendment can hardly be characterized as a model of clarity, we believe the most plausible construction, consistent with the overriding statutory scheme, is that it vests the school board with authority to reject a hearing officer's findings of *ultimate fact* and *recommendation of retention,* and to substitute in their place new ultimate findings and an order of dismissal, as long as the new ultimate findings are fully warranted by the evidentiary findings of the hearing officer and the school board states the reasons for its new findings of ultimate fact. Such construction accords with the rule, fully articulated in our 1978 decision in *Blair v. Lovett,* 196 Colo. 118, 582 P.2d 668 [1978], and subsequently reaffirmed in *Ricci [v. Davis],* 627 P.2d 1111 [Colo.1981], and *deKoevend [v. Board of Educ.],* 688 P.2d 219 [Colo.1984], that findings of evidentiary fact are binding on the school board if adequately supported by the record, but that the school board may reject a finding of ultimate fact because it is the

**1302**

school board, not the hearing officer, that "has the power to determine what facts constitute the statutory grounds for dismissal." *Lovett,* 196 Colo. at 125, 582 P.2d at 673. If the school board finds as an ultimate fact that the teacher is guilty of one of the statutory grounds for dismissal as charged, and such finding of ultimate fact is supported by the hearing officer's findings of evidentiary fact, then the statutory sanction to be imposed on the teacher—that is dismissal, retention, or one year probation, § 22–63–117(10), 9 C.R.S. (1983 Supp.)—is for the school board, not the hearing officer, to decide.

*Id.* at 1290 (emphasis in original).

Our holding in *Blaine* provides clear justification for the school board's action in this case. The school board's ultimate finding of insubordination was fully warranted by the hearing officer's findings of evidentiary fact. Moreover, the hearing officer's determination that Ware's act of insubordination did not warrant dismissal was in the nature of a recommendation only and, as such, was not binding on the school board. § 22–63–117(8) & (10), 9 C.R.S. (1983 Supp.). In its resolution, the school board stated its reason for rejecting the hearing officer's recommendation by pointing out the aggravated nature of Ware's conduct and the fact that it was in direct violation of a written order. In light of this state of the record, and consistent with our construction of the 1979 amendment in *Blaine,* we conclude that the school board did not violate section 22–63–117(10) when it ordered Ware's dismissal contrary to the hearing officer's recommendation of retention.

The judgment of the court of appeals is accordingly affirmed.