No. 61,137

LARRY LEAMING, *Appellant,* v. UNIFIED SCHOOL DISTRICT NO. 214, *Appellee,* and LARRY LEAMING, *Appellant,* v. DR. TIMOTHY RUNDUS, *Appellee.*

(750 P.2d 1041)

Opinion filed February 19, 1988.

*Evan Nightingale,* of Nightingale & Calvin, of Ulysses, argued the cause and was on the brief for appellant.

*Jerry M. Ward,* of Ward & Berscheidt, of Great Bend, argued the cause, and *K. Mike Kimball,* of Hathaway, Kimball & Boelte, of Ulysses, was with him on the brief for appellees.

The opinion of the court was delivered by

PRAGER, C.J.: This is an action brought by Larry Leaming, a teacher, against Unified School District No. 214, Ulysses, Kansas, alleging wrongful termination of his teaching contract and a denial of due process by failure of the school board to provide a fair hearing as required by law. In this action, the plaintiff sought recovery of damages, compensatory and punitive, and an injunction requiring plaintiff's reinstatement as a teacher and prohibiting the school board from terminating his teaching contract. In a separate action, brought against the school superintendent, Dr. Timothy Rundus, plaintiff sought recovery for tortious interference with his teaching contract. The district court entered judgment in favor of the defendant in each case, and plaintiff brought a consolidated appeal.

The essential facts in the case are not in dispute and basically are as follows:

(1) Plaintiff was an employee of U.S.D. No. 214 for the school year 1982-83 pursuant to a written contract dated May 11, 1982.

(2) In the spring of 1983, Caroline Arrott and Patti Williams, high school students in U.S.D. No. 214, qualified for the International Science Exhibition Fair (ISEF) meeting in Albuquerque, New Mexico, to be held May 9-14, 1983. The superintendent of U.S.D. No. 214, Dr. Timothy Rundus, was informed that the plaintiff, Larry Leaming, a seventh grade science teacher, intended to accompany the two girls to the meeting in Albuquerque. Since Leaming had not made a formal request to be in attendance at the meeting, Dr. Rundus contacted Leaming on May 3, 1983, and Leaming advised Dr. Rundus that he intended to attend the meeting. He was informed by Dr. Rundus that he had teaching responsibilities and that he would not be given permission to go due to the fact that the two girls were not under his jurisdiction. He also told Leaming that there was a lack of planning and poor communication with the building principal and the administration concerning the trip.

(3) On May 5, 1983, the plaintiff was again advised by the superintendent that he would not be allowed to make the trip. Plaintiff stated that he understood perfectly and it was quite clear to him, but that he intended to go anyway. He was informed that this was unacceptable and he was encouraged to consider carefully the alternatives, but that if he chose to go, his resignation should be submitted to U.S.D. No. 214 by 4:00 p.m. on May 6, 1983.

(4) On May 7, 1983, plaintiff called the superintendent and advised him that it was his intent to leave school on May 9, 1983, to attend the science fair. The superintendent urged him to reconsider and encouraged him to have someone else go. Dr. Rundus told Leaming that, if he did go without submitting his resignation, Rundus would make a recommendation to the board of education that he be suspended, or that the board make some other arrangement concerning his contractual obligation with the district. The superintendent advised the plaintiff that the possible consequences of his action were (1) suspension from teaching duties without pay; (2) forfeiture of pay for time absent from teaching duties; and (3) nonrenewal of his teaching contract. Plaintiff contends that the superintendent told him that he would recommend to the Board that he be suspended for two weeks with pay.

(5) Plaintiff left to attend the science fair at 8:30 on the morning of May 9, 1983, and a substitute teacher was secured to teach his classes.

(6) Plaintiff admitted that he committed an act of defiance toward the administration of U.S.D. No. 214, and that his superior, the superintendent, made a statement to him that he was not to attend the science fair. He went anyway, notwithstanding that he had been advised that his contract would be in jeopardy.

(7) Plaintiff admitted that he signed a contract with U.S.D. No. 214 in which he agreed to obey the rules and regulations of the board of education and the directions of the superintendent of schools. He also admitted that he did not obey the directions of the superintendent and defied him in attending the science fair the week of May 9-14, 1983.

(8) On May 12, 1983, the superintendent of U.S.D. No. 214 sent a letter to the plaintiff advising him that an inquiry as to his alleged breach of duty as a teacher would be held by the board of education at 7:45 a.m. on May 16, 1983. The letter advised the plaintiff that his presence was expected for the purpose of establishing the facts concerning his absence from work and that decisions would be made at that time concerning his status as a teacher.

(9) On May 16, 1983, at a special meeting of the board of education of U.S.D. No. 214, the six members present unanimously terminated the plaintiff's continuing contract for the 1983-84 school year on the basis of the plaintiff's violation of the contract terms.

(10) On May 16, 1983, pursuant to K.S.A. 72-5437 and K.S.A. 72-5438, the plaintiff was notified of the termination. (Note: hereafter all relevant statutes are cited to the 1980 Ensley statute book.)

(11) On May 27, 1983, pursuant to K.S.A. 72-5438, the plaintiff requested the matter be heard by a hearing committee and designated Melvin Wilson as a member of the committee.

(12) U.S.D. No. 214 designated Richard M. Pickler as a hearing committee member, and he and Melvin Wilson designated Larry Kepley, to act as chairman of the committee.

(13) On January 20, 1984, a hearing was held pursuant to K.S.A.

72-5442 by the hearing committee. Testimony was recorded and cross-examination was afforded to all parties.

(14) Upon request of plaintiff and by agreement a continuation of the January 20, 1984, hearing was granted and a second hearing was held on March 31, 1984. The plaintiff appeared and testified. The hearing was recorded and cross-examination was afforded all parties.

(15) Subsequent to the hearing on March 31, 1984, the hearing committee rendered a written opinion finding the following:

a. That Larry Leaming was employed by U.S.D. No. 214 by written contract;

b. that Dr. Timothy Rundus, superintendent of U.S.D. No. 214, specifically forbade Larry Leaming from attending an ISEF meeting in Albuquerque, New Mexico, May 9-14, 1983;

c. that Larry Leaming personally knew he was not to attend the above function and such knowledge thereof was specifically and personally communicated to him by Superintendent Rundus;

d. that despite such directive of forbearance, Larry Leaming left his teaching position at U.S.D. No. 214 between May 9-14, 1983, and did not report to his teaching position in U.S.D. No. 214 during the dates indicated;

e. that Larry Leaming was in violation of his teaching contract in that he failed to obey the rules and regulations of the board of education and that he failed to obey the directives of the superintendent of U.S.D. No. 214;

f. that this hearing committee upheld and sustained the decision of U.S.D. No. 214 terminating the 1983-84 teaching contract of Larry Leaming.

(16) The recommendation of the hearing committee was submitted to plaintiff and to defendant, U.S.D. No. 214.

(17) Plaintiff did not request the board of education of U.S.D. No. 214 to provide him with a hearing or the opportunity to submit a brief subsequent to the receipt of the hearing committee's recommendation.

(18) Plaintiff did not appeal to the district court as provided by K.S.A. 72-5443, but instead filed a separate action.

(19) On April 17, 1987, the district court issued its findings and conclusions upon which judgment was entered in favor of the defendants and against the plaintiff.

The trial court held, in substance, that it could grant summary judgment to defendants because the basic facts in the case were undisputed and showed as a matter of law that plaintiff had not been denied a due process hearing and, furthermore, that plaintiff's evidence clearly showed that plaintiff had violated his contract as a teacher and the board of education had the right to terminate his teaching contract.

Plaintiff raises several issues on the appeal which, in substance, take the position that the trial court erred in granting summary judgment against plaintiff and in favor of the school district and Dr. Rundus for the reason that the record raises substantial factual issues as to whether the plaintiff was denied certain due process rights under the Kansas Due Process Procedure Act (K.S.A. 72-5436 *et seq.*).

Before considering the specific issues raised in the case, it would be helpful to review certain basic concepts and principles of law pertaining to the termination of tenured teachers as provided by K.S.A. 72-5436 *et seq.* The basic provisions are covered in depth in this court's opinion in *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 605 P.2d 105 (1980), which states on pages 75-77 of the opinion:

"At the outset, it should be stated that the dismissal of teachers and the nonrenewal of their teaching contracts is sometimes a complex, difficult process with serious implications. Because of the fact that, under the statutory procedures, the dismissal or nonrenewal of a teacher requires a long and time-consuming effort, school administrators and boards of education are often reluctant to institute such procedures against teachers who ought to be dismissed. As a result the students suffer in the quality of their education. On the other hand, teachers at times in the past have not been fairly treated and have been dismissed or nonrenewed without good reason. As a result of the due process procedure established by the legislature in 1974, teachers are now seeking and being afforded protection of their rights by the courts. In determining cases involving the dismissal or nonrenewal of a teaching contract, the courts are obligated to consider the rights of the teacher, the rights of the school board, and the rights of the school children to receive a quality education in a proper school atmosphere. In every such case, the challenge presented to the court is to provide a decision, fair and equitable both to the teacher and to the school board, with a minimum amount of disruption of the educational opportunity for the children. See Jacobsen, Sperry, & Jensen, *The Dismissal & Non-Reemployment of Teachers*, 1 J. L. & Educ. 435 (1972).

"Statutes providing protection for at least some tenured teachers from unjust

dismissal have been in existence in Kansas for many years. Teachers and other professional employees, employed in public school systems in cities having a population of 120,000 inhabitants or more, were provided tenure by statute in 1937 (G.S. 1949, 72-5401 *et seq.*). In *Million v. Board of Education*, 181 Kan. 230, 310 P.2d 917 (1957), the purpose of the Tenure of Instructors Act (G.S. 1949, 72-5401 *et seq.*) was stated to be as follows:

" 'The evident purpose of the Tenure of Instructors Act (G.S. 1949, Chapter 72, Art. 54) is to protect competent and worthy instructors and other members of the teaching profession against unjust dismissal of any kind—political, religious or personal, and secure for them teaching conditions which will encourage their growth in the full practice of their profession, unharried by constant pressure and fear, but it does not confer special privileges or immunities upon them to retain permanently their positions or salary, nor permit their interference with the control or efficient operation of the public-school system; and, notwithstanding it grants tenure to those who have taught the requisite period, it nonetheless empowers Boards of Education to discharge them for *just cause* in an orderly manner by the procedures specified.' (Syl. ¶ 1.) (Emphasis supplied.)

K.S.A. 72-5401 through 72-5409 were repealed in 1974. At that time, the legislature enacted K.S.A. 1977 Supp. 72-5436 *et seq.*, as a comprehensive due process procedure covering the termination or nonrenewal of teachers' contracts in every school district, area vocational-technical school, and community junior college in the state. It is clear to us that the statutory scheme to provide tenure for all school teachers throughout the state has the same purpose as that of the Tenure of Instructors Act which is discussed in *Million*.

"If the courts are to carry out the legislative purpose of the teacher tenure statutes, they must require a board of education to show good cause in order to justify the dismissal or nonrenewal of a tenured teacher. The requirement of good cause is inherent in the statutory scheme created by K.S.A. 1977 Supp. 72-5436 *et seq.* 72-5437 provides that all contracts of employment of teachers shall be deemed to continue for the next succeeding school year unless written notice of termination or nonrenewal is served. A written notice of intent to nonrenew a contract must be served by a board upon any teacher on or before the fifteenth day of March. In passing, it should be noted that the date for notice of nonrenewal was changed in 1978 to require the written notice of the school board's intent to nonrenew a contract must be served upon the teacher on or before the fifteenth day of *April* (K.S.A. 1979 Supp. 72-5437). 72-5438 requires the written notice of nonrenewal to include:

"1. A statement of the *reasons* for the proposed nonrenewal or termination, and

"2. A statement that the teacher may have the matter heard by a hearing committee.

Under 72-5439, specific procedural due process requirements are set forth including the right to an orderly hearing and the right of the teacher to a fair and impartial decision based on *substantial* evidence. It should be noted that 72-5439(*d*) affords to the board the right to present its testimony and give *reasons* for its actions, rulings, or policies. 72-5442 places the burden of proof upon the

school board in all instances other than where the allegation is that the teacher's contract is nonrenewed by reason of the teacher's exercise of a constitutional right. 72-5443 requires the hearing committee to render a written recommendation, setting forth its findings of fact. The recommendation of the hearing committee is required to be submitted to the teacher and to the board. The board, after considering the hearing committee's recommendation and hearing arguments, decides whether the teacher's contract shall be renewed or terminated. The decision of the school board is final, subject to appeal to the district court as provided by K.S.A. 60-2101.

"This summary of the applicable statutes has been provided to make it clear that the purpose of the due process hearing is to inquire into the reasons for the dismissal or nonrenewal of the teacher and to determine whether or not the evidence presented establishes good cause within the spirit and purpose of the teacher tenure statutes."

The scope of review by the district court of school board decisions in a nonrenewal case is fully covered by *Brinson v. School District,* 223 Kan. 465, Syl. ¶ 6, 576 P.2d 602 (1978). In *Brinson,* this court held that, in reviewing a decision of an administrative agency under 60-2101, a district court may not substitute its judgment for that of the administrative agency or tribunal and may not examine the issues de novo; it is limited to deciding whether: (1) the agency or tribunal acted fraudulently, arbitrarily, or capriciously; (2) the administrative order is substantially supported by evidence; and (3) the tribunal's action was within the scope of its authority. In reviewing the judgment of the district court in an administrative appeal, this court is required to determine whether the district court properly limited its scope of review. *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 451, 436 P.2d 828 (1968); *Coggins v. Public Employee Relations Board,* 2 Kan. App. 2d 416, 581 P.2d 817, *rev. denied* 225 Kan. 843 (1978).

In this case, a full evidentiary hearing was had before the hearing committee which upheld and sustained the decision of U.S.D. No. 214 in terminating Leaming's 1983-84 teaching contract. The recommendation of the hearing committee was submitted both to the plaintiff and to the school board. The record fails to show that the school board thereafter ever took any action on the hearing report. The school board failed to notify the plaintiff teacher whether it had adopted or not adopted the decision of the hearing committee or whether the contract of the teacher should be renewed or terminated. It is clear, however,

from the record, that both the plaintiff teacher and the school board knew that it was not the intention of the school board to renew plaintiff's teaching contract. Following his initial termination, plaintiff obtained a new teaching contract for the 1983-84 school year at U.S.D. No. 455 in Cuba, Kansas, at a salary of $16,800 per year. Plaintiff's salary under his contract with U.S.D. No. 214 was in the amount of $21,460 per year. The record also discloses that plaintiff renewed his contract with U.S.D. No. 455, Cuba, Kansas, for the school year 1984-85. For the school year 1985-86, plaintiff was employed by the Phoenix Institute of Technology of Phoenix, Arizona, with a variable salary.

The hearing committee in the present case, by a unanimous decision including the affirmative vote of the plaintiff's own nominee on the hearing committee, voted to uphold the action of the school board. Under the provisions of K.S.A. 72-5443, as it existed prior to July 1, 1984, the recommendation of the hearing committee was to be submitted to the teacher and to the board of education. After considering the hearing committee's recommendation and after receiving oral arguments or briefs from the teacher, the board of education was required to decide whether the teacher should be terminated or renewed.

K.S.A. 72-5443 was amended, effective July 1, 1984, to provide that, if the members of the hearing committee are unanimous in their opinion, the board of education *shall* adopt the opinion as its decision in the matter and such opinion shall be final, subject to appeal to the district court as provided in 60-2101. That 1984 amendment was approved April 6, 1984, within a week following the close of Leaming's final hearing before the special committee on March 31, 1984. However, as noted, the new statute did not become effective until July 1, 1984. We believe that, under these circumstances, in view of the fact of the amendment of 72-5443, which was about to come into effect, both the plaintiff teacher and the school board may well have assumed that the plaintiff's teaching contract for the calendar year 1983-84 had been terminated. Plaintiff made no request for a hearing or offer to submit briefs or oral arguments to the school board. Plaintiff did nothing until he filed his action against the school board over a year later on May 15, 1985.

The facts set forth above raise a jurisdictional issue which must

first be dealt with. Under K.S.A. 60-2101, which affords an appeal to a teacher in a contract renewal case, where a teacher protected by the teacher tenure act requests and receives a due process hearing but fails to take a timely appeal to the district court, the teacher is precluded by the doctrine of res judicata from raising the same issues in another action or proceeding. See *Neunzig v. Seaman U.S.D. No. 345*, 239 Kan. 654, 722 P.2d 569 (1986). Thus, if the teacher fails to take a timely appeal to the district court in a contract termination case, that ordinarily ends the litigation.

In this case, however, the school board failed to act on the report of the hearing committee as required by K.S.A. 72-5443. There being no final decision of the school board, the right of the plaintiff to take an appeal to the district court was never triggered. Thus, it is clear that plaintiff was never afforded a right to appeal to the district court from the termination of his teaching contract. Under these circumstances, the plaintiff, never having been afforded his right to appeal, had the right to bring this independent action against the school board challenging the termination of his teaching contract for the year 1983-84 on the basis that he was denied his due process rights. We have concluded that the trial court properly had jurisdiction of the case to consider whether or not the plaintiff had been denied a due process hearing as required by the Kansas statutes.

Plaintiff in the district court and again on this appeal maintains that he was denied procedural due process for three basic reasons:

(1) His hearing before the committee was completed more than ten months after his contract was terminated.

(2) He was denied due process by the service of Richard Pickler, treasurer of U.S.D. No. 214, as a member of the hearing committee.

(3) He was denied due process by virtue of the school board's failure to review the hearing committee's decision and render a final decision as required by K.S.A. 72-5443; his right to an appeal to the district court was, therefore, denied.
We will consider each of these contentions separately.

In regard to the delay in his committee hearing, which was completed more than ten months after his discharge, the trial

court found there was no violation of due process. We cannot say that the trial court erred in this regard. There are no specific statutory guidelines for the time to be set for a committee hearing under the Kansas Teacher Tenure Law. K.S.A. 72-5438 requires a teacher to request a hearing within fifteen days after termination. The school board is allowed fifteen days thereafter to designate a hearing committee, and the chairman must be selected within the next five days. There is, however, no specific time provided in the statute for holding the committee hearing.

In *Crane v. Mitchell County U.S.D. No. 273*, 232 Kan. 51, 652 P.2d 205 (1982), eighteen months elapsed between termination of the teacher's contract and the hearing committee's recommendation. The court noted that much of the delay was caused by the plaintiff's failure to file his written brief. The court did, however, list several factors for determining if the hearing time met due process requirements:

"The factors to consider in determining whether the timing of a hearing comports with due process include the private interest that will be affected, the risk of an erroneous deprivation of that interest through the procedures used, and the State's interest in the procedures used as well as the administrative burdens that any additional procedural requirements would entail." Syl. ¶ 3.

In the opinion, it is further stated that due process requires that one be given the opportunity to be heard "at a meaningful time and in a meaningful manner." 232 Kan. at 64.

In the present case, the plaintiff received both appropriate notice and a hearing. The hearing was continued for two months at the plaintiff's request. There is no suggestion that any improper motive caused delay in the hearing. In fact, the plaintiff does not argue the delay caused him any prejudice. In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 84 L. Ed. 2d 494, 105 S.Ct. 1487 (1985), the United States Supreme Court rejected the teacher's argument that a delay in a hearing which does not cause harm can violate due process. The Court stated:

"At some point, a delay in the post-termination hearing would become a constitutional violation. See *Barry v. Barchi*, 443 U.S. at 66. In the present case, however, the complaint merely recites the course of proceedings and concludes that the denial of a 'speedy resolution' violated due process. App. 10. This reveals nothing about the delay except that it stemmed in part from the thoroughness of the procedures. A 9-month adjudication is not, of course, unconstitutionally lengthy *per se*. Yet Loudermill offers no indication that his wait was unreason-

ably prolonged other than the fact that it took nine months. The chronology of the proceedings set out in the complaint, coupled with the assertion that nine months is too long to wait, does not state a claim of a constitutional deprivation." p. 547.

The record does not show that, at any time in the course of the committee hearing, plaintiff objected to the time of the hearing. In fact, the committee made every effort to accommodate the plaintiff and delayed the hearing for a period of two months at plaintiff's request. The record indicates that, not long after the plaintiff was first terminated, he proceeded to obtain a new teaching contract with another school district for the 1983-84 school year. He was permitted to complete his teaching contract for the school year 1982-83. Under the circumstances, we hold that the trial court correctly determined that the due process rights of the plaintiff were not violated by any delay in the committee hearing.

Plaintiff next contends that he was denied due process of law by the service of Richard Pickler, treasurer of School District No. 214, as a member of the hearing committee. The board of education nominated Richard Pickler to serve as its representative on the hearing committee. Pickler was a local attorney who had no financial interest in the outcome of the case. His duty as treasurer was limited to transferring funds and he received no pay whatsoever for his services as treasurer. His services were free to the school. He was not an attorney or legal advisor for the school board. A review of the proceedings before the hearing committee showed that Mr. Pickler was concerned that the proceedings be conducted in a fair and impartial manner. At no time in the course of the proceedings did plaintiff's counsel object on the record to the service of Richard Pickler on the committee. According to an answer to an interrogatory submitted by the school board, plaintiff's attorney, Evan Nightingale, expressed his concerns to Pickler about his serving. But counsel never objected for the record about Pickler's services. Nightingale apparently told Pickler his services might be the basis for an appeal.

The district court, in its findings and conclusions of law, noted that, although Pickler was treasurer for the school board, he acted as a volunteer, received no compensation, and simply wrote and signed checks for the school district. At no time was he

appearing in the controversy as attorney for the school board or the district. The trial court concluded that Pickler was under no obligation of any kind to the board of education, and that his experience and ability was an asset to the committee. The trial court also noted that the decision of the committee in upholding the termination of plaintiff's contract was unanimous and included the affirmative vote of plaintiff's designated member, Melvin Wilson.

The present case does not present a situation similar to that in *Coats v. U.S.D. No. 353*, 233 Kan. 394, 662 P.2d 1279 (1983). In *Coats*, this court held that the appointment of a school board attorney to the hearing committee violated the rule of fundamental fairness. A school board attorney clearly has a conflict of interest and, as the court pointed out, he was the person who prepared all the documents and gave the school board his legal counsel in arriving at its decision to nonrenew the teacher. A school board attorney also has an obvious financial interest in confirming the school board's decision. In the present case, although Pickler is an attorney, there has been no conflict of interest shown. He had no financial interest in the outcome of the case. Under all the circumstances, we hold that the trial court did not err in concluding the due process rights of the plaintiff were not violated by the service of Mr. Pickler on the hearing committee.

The final claim by the plaintiff is based upon the fact that the plaintiff was denied a right of appeal to the district court by failure of the board of education to review the hearing committee's decision and render a final decision. We have no hesitancy in holding that the board of education should have considered the hearing committee's report and acted thereon so that plaintiff's statutory right of appeal to the district court would have been made possible. Several Kansas cases have noted the duty of the board of education to render its final decision under K.S.A. 72-5443. *Haddock v. U.S.D. No. 462*, 233 Kan. 66, 661 P.2d 368 (1983); *Kelly v. Kansas City, Kansas Community College*, 231 Kan. 751, 759, 648 P.2d 225 (1982); *Gillett v. U.S.D. No. 276*, 227 Kan. at 77.

As noted heretofore, K.S.A. 72-5443 was amended effective July 1, 1984, and now provides that, if the members of the

hearing committee are unanimous in their opinion, the board of education *shall* adopt the opinion as its decision in the matter and such decision shall be final, subject to appeal to the district court as provided in 60-2101. If the members of the hearing committee are not unanimous in their opinion, the board of education is required to consider the opinion and decide whether the contract should be renewed or terminated. The July 1, 1984, amendment was held to operate retrospectively in *Keller v. Board of Trustees of Coffeyville Community College,* 12 Kan. App. 2d 14, 733 P.2d 830 (1987), where the Court of Appeals reasoned that the amendment affected only the procedure to be applied and, therefore, "all rights of action will be enforced under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether or not the suit has been instituted." 12 Kan. App. 2d 14, Syl. ¶ 1.

In the present case, it would be possible for this court to order the matter remanded so that the school board could make its final decision on the hearing committee's report. However, that would accomplish little in view of the fact that the decision of the hearing committee was unanimous. We believe that the most effective way for the district court to protect the rights of plaintiff was for the district court to examine the record and determine whether or not plaintiff's due process rights had been violated. That was exactly the procedure followed by the district court.

The only real issue in this case was whether the plaintiff suffered a denial of any due process rights by reason of the termination of his teaching contract for the year 1983-84. The district court, in granting summary judgment, held, as a matter of law based upon the undisputed evidence, that plaintiff by his own admissions directly defied the superintendent's order not to absent himself for one week in May in order to attend a science fair in Albuquerque, New Mexico, with *former* students. The trial court stated that, although the record indicated that Leaming was an excellent teacher, he chose to exercise his teaching abilities without regard to the interests of the school system and in defiance of an administrative order that he not absent himself from his teaching duties.

In order to show clearly the undisputed facts in this case, it

would be helpful to examine plaintiff's testimony at the committee hearing. Plaintiff's teaching contract provided, in substance, as follows:

"This contract may be terminated by the Board of Education at any time for . . . failure to obey . . . the directions of the Superintendent of Schools."

The plaintiff in his testimony before the hearing committee testified in part as follows:

"Q. Now, you, you've admitted that you committed an act of defiance towards the administration of U.S.D. # 214, is that correct?

"A. Yes, that is correct.

"Q. Well, how do you explain, how do mean that you committed an act of defiance?

"A. Dr. Rundus, uh, as my superior made a, a statement to me that I was not to attend with these students in, uh, Albuquerque, New Mexico.

"Q. And you did it anyway.

"A. And I went to Albuquerque, New Mexico.

"Q. Yes. After even being told that your contract would be placed in jeopardy or would be in jeopardy, is that correct?

"A. He made that statement that, uh, your contract would be in jeopardy.

"Q. What did that mean to you, Mr. Leaming. That your contract would be in jeopardy.

"A. That there would be, uh, consideration.

"Q. Wouldn't that mean that you could be fired?

"A. I didn't take it that way at that time.

"Q. But doesn't that what really your contract being put in jeopardy means that you could be fired?

"A. At that particular point, I was not under that understanding, no sir.

"Q. But after reflection today, don't you think that's what that language really could reasonably be interpreted to mean, that you might be fired?

"A. Well, after what had transpired, why I guess it was."

At a later point while on the witness stand, plaintiff admitted that he breached the directive to teach his regularly assigned classes on May 9 to May 13.

The evidence in this case was thus undisputed that plaintiff Leaming violated his contract of employment. The board of education had clearly specified in plaintiff's contract its right to terminate Leaming if he failed to obey the directions of the superintendent. Plaintiff testified that he willfully violated such directions.

Under these circumstances, plaintiff was not denied any due process rights nor did he suffer any injury or damages as a result of the board of education's failure to formally accept the findings

of the hearing committee and act thereon. The undisputed facts show that the plaintiff was terminated with good cause. If the board of education had followed the statute and plaintiff had taken a statutory appeal to the district court, he could not have prevailed in view of the undisputed facts. Any district court which heard an appeal would have no right to substitute its judgment for that of the hearing committee or the school board. The school board had a legitimate cause to discharge the plaintiff under his contract, and it cannot reasonably be said that the board of education acted unreasonably, arbitrarily, or capriciously or that its order of nonrenewal was not supported by good cause.

In view of the undisputed facts contained in the record, we conclude that the trial court properly decided the case by holding that plaintiff's due process rights were not violated. The board of education had the right to terminate plaintiff's teaching contract for the 1983-84 school year, because he willfully disobeyed the directions of the superintendent of schools as discussed above.

As to the plaintiff's appeal in the case filed against Dr. Rundus, the decision of the trial court granting summary judgment in favor of Dr. Rundus must be affirmed. The evidence was undisputed that plaintiff's contract rights were not violated and that Dr. Rundus at all times acted in performance of his official responsibility as superintendent of schools.

The judgment of the district court is affirmed.

HERD, J., dissenting: Appellant argues he was denied procedural due process for three reasons: (1) his hearing was delayed ten months; (2) the treasurer of the school board was a member of the hearing committee; and (3) the school board failed to review the hearing committee's decision and render a final decision as required by K.S.A. 72-5443; thus, his right to an appeal to the district court was denied.

I am in accord with the majority's opinion that the treasurer of a school board may serve on a hearing committee. I disagree, however, with the other two issues as hereafter set out.

A tenured teacher, which Leaming was, has an expectation of continued employment which qualifies for constitutional protection as a species of property. " 'The very purpose of tenure

and continuing contract laws is to give recognition to a constitutionally protected interest.' " *Kelly v. Kansas City, Kansas Community College,* 231 Kan. 751, 760, 648 P.2d 225 (1982); *Endicott v. Van Petten,* 330 F. Supp. 878, 882 (D. Kan. 1971). See *Board of Regents v. Roth,* 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972); *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty.,* 432 F. Supp. 895, 903 (D. Kan. 1977). Thus, we are dealing with Leaming's property rights, which are protected by the Due Process Clause of the 14th Amendment to the United States Constitution. The Kansas Legislature provided the required due process procedure to nonrenew a tenured teacher's continuing contract. The statutory procedure must meet the requirements of the 14th Amendment. This case does not challenge the constitutionality of the statutory procedure. It challenges the school board's compliance with the statute. K.S.A. 72-5443, the applicable statute, provides:

"Unless otherwise agreed to by both the board and the teacher, the hearing committee shall render a written recommendation not later than thirty (30) days after the close of the hearing, setting forth its findings of fact and recommendation as to the determination of the issues. The recommendation of the hearing committee shall be submitted to the teacher and to the board which shall, after considering the hearing committee's recommendation and after hearing oral argument or receiving written briefs from the teacher and a representative of the board, decide whether the teacher's contract shall be renewed or terminated, which decision shall be final, subject to appeal to the district court as provided by K.S.A. 60-2101. The decision of the board shall be submitted to the teacher not later than thirty (30) days after the close of oral argument or submission of written briefs."

Leaming was nonrenewed in May 1983. He asked for a due process hearing at that time. He did not receive a hearing until January of 1984. He deserved a hearing within a short time after the request to permit him to make an orderly decision about future employment. This delay was unreasonable. The hearing committee rendered its recommendation in a timely manner after the hearing but the school board took no further action. Thus, Leaming was denied the opportunity to argue his case or present a brief to the school board as provided by statute. But more importantly, the school board's failure to make a decision on Leaming's nonrenewal after it received the hearing committee's recommendation denied him review by the district court

and the right of appellate review. The statute provides "the board . . . shall, after considering the hearing committee's recommendation and after hearing oral argument or receiving written briefs . . . , decide whether the teacher's contract shall be renewed or terminated" subject to the teacher's right to appeal to the district court.

The majority opinion attempts to shift the blame to Leaming for the failure of the school board to give him the statutory hearing. This reasoning is not well founded. It must be remembered we are talking about a taking of property by the State. The State cannot take a person's property except by due process. This means if the due process provided by statute was not afforded Leaming in the nonrenewal of his continuing contract, the taking was defective and the contract continues. Leaming had a valid contract until it was validly terminated by the school board. The school board sought to terminate the contract. It was thus the school board's obligation to comply with the law to accomplish its desired result. If it failed, Leaming's contract continued.

It is argued in the majority opinion that Leaming's filing of this independent action for violation of his constitutional rights cures the defect in the due process procedure. I disagree. The issues in this case were fixed when Leaming requested a due process hearing. Once such a request is made, the statutory procedure must be complied with and the notice of nonrenewal is not final until the school board makes a decision based on the hearing committee recommendations. There was no decision, so there can be no taking, and Leaming's contract continued.

The majority opinion, in one last effort to make the school board's violations of the statute and the Constitution legal, argues that the amendment to K.S.A. 72-5443, effective July 1, 1984, which provides that a unanimous recommendation of the hearing committee is binding on the board, relates back to the previous year since it is merely a procedural change. It argues this makes the hearing committee's recommendation the actual decision of the school board, thus the board was not required to make a decision.

The majority is wrong on this issue also. A statutory change pertaining to a substantive right is not retroactive unless the legislature so provides. The 1984 amendment is substantive. It

tells the school board what decision it shall make pertaining to the taking of property when the hearing committee is unanimous in its recommendation. Thus, because the change is not procedural and the legislature did not make it retroactive, the 1984 amendment is inapplicable to this case.

In *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 646-47, 39 L. Ed. 2d 52, 94 S. Ct. 791 (1974), the United States Supreme Court made the following statement about due process which is relevant here:

" '[T]he Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones.' " (Quoting *Stanley v. Illinois*, 405 U.S. 645, 656, 31 L. Ed. 2d 551, 92 S. Ct. 1208 [1972].)

16A Am. Jur. 2d, Constitutional Law § 806, pp. 955-56, makes this comment:

"The guaranty of due process of law is one of the most important to be found in the Federal Constitution or any of the amendments; it has been described as the very essence of a scheme of ordered justice, and it has been said that without it the right of private property could not be said to exist, in the sense in which it is known to our laws.

"Due process of law is the primary and indispensable foundation of individual freedoms; it is the basic and essential term in the social compact which defines the rights of the individual and delimits the powers which the state may exercise. The fundamental guaranty of due process is absolute, and not merely relative. It does not have regard merely to enforcement of the law, but searches also the authority for making the law, and it is not merely a political right, but is a legal right assertable in the courts. By reason of this guaranty it has been stated as a general principle that everyone is entitled to the protection of those fundamental principles of liberty and justice which lie at the basis of all our civil and political institutions and have long been recognized under the common-law system, and which are not infrequently designated as 'law of the land.' The right is of such importance that the people have never delegated to either the state or federal government the power to deprive a person of property except by observing its requirements. A state's obligations under the Fourteenth Amendment are not simply generalized ones; rather, the state owes to each individual that process which, in light of the values of a free society, can be characterized as due."

Leaming had an absolute due process right to a board decision subject to court and appellate review. This he was denied. The merits of the nonrenewal of Leaming's contract are not before us.

If Leaming did not receive due process, there was no nonrenewal. That is the question in this case.

If the majority opinion stands, it is stating that due process is selective and that only those with good cause are entitled to it. That is not the law. All are entitled to due process in this country; the guilty, the innocent, the breachers of contracts. The Constitution is not selective and that we are not privileged to draw conclusions from the facts and deny a litigant due process because we favor a given result. Result-oriented justice is government of men and not of law, directly contrary to the concept of the rule of law.

I would reverse and remand.

ALLEGRUCCI, J., joins the foregoing dissenting opinion.

LOCKETT, J., concurring and dissenting: The majority correctly reasons that neither the delay in the hearing by the hearing committee nor the service by the school board treasurer on the committee violated the due process rights of the teacher. Justice Herd correctly states in his dissent that the majority incorrectly applies the 1984 amendment to K.S.A. 72-5443. It is not proper to give a retrospective application to a procedural statute where a vested right exists prior to the effective date of the statute. *Jackson v. American Best Freight System, Inc.*, 238 Kan. 322, 709 P.2d 983 (1985).

The majority disregards the fact that the school board's deprival of the teacher's statutory right to the appeal of the termination of his contract is the crux of this civil action. Both the district court and the majority of this court simply converted the action from one for deprivation of due process to an appeal authorized by K.S.A. 72-5443. After converting the civil action, the majority recites the scope of review of school board decisions in nonrenewal cases (citing *Brinson v. School District*, 223 Kan. 465, 576 P.2d 602 [1978]), reviews the evidence, and affirms the decision of the district court. Such review again deprives plaintiff of his due process rights.

The merits of the plaintiff's wrongful termination claim is not an issue properly before this court. The only issue is whether the teacher is entitled to a hearing in the district court on his claim that his due process rights were violated. I believe this case

should be remanded. To prevail in the district court, the teacher would be placed in the same situation as a client who sues his former attorney for allowing the statute of limitations to run. Specifically, the teacher must prove: (1) that he would have succeeded in the appeal; and (2) what damages were caused by the wrongful termination of the contract and the loss of his due process rights.

The majority states that there is undisputed evidence that Leaming violated his contract of employment in that he willfully failed to obey the directions of the superintendent. These facts may be correct but, to reiterate, wrongful termination is not the issue before this court. The majority cannot disregard the primary question of this controversy, change the nature of the action to an appeal of a nonrenewal and then affirm. We must remember that we are restricted by rules of law. The action of the majority may be more expedient, but our power of review cannot be expanded to include expediency.