(794 P.2d 307)
No. 64,159

STEVE GAYLORD, *Appellant,* v. BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 218, Morton County, Kansas, *Appellee.*

Opinion filed June 15, 1990.

*David M. Schauner,* of Kansas-National Education Association, of Topeka, for appellant.

*William J. Graybill,* of Graybill & Richardson, of Elkhart, for appellee.

Before Brazil, P.J., Larson, J., and John W. White, District Judge, assigned.

White, J.: Steve Gaylord appeals from the district court's ruling affirming the termination of his teaching contract pursuant to K.S.A. 72-5436 *et seq.* by the Board of Education, Unified School District No. 218, Morton County, Kansas (Board). Gaylord argues that there was not substantial evidence to support the finding of insubordination and that the Board's decision to terminate the contract was, therefore, arbitrary and capricious. We affirm.

In April 1987, the Board voted to renew Gaylord's teaching contract for the 1987-88 school year. Gaylord decided to explore employment opportunities elsewhere and scheduled a job interview in Bovina, Texas, for May 21, 1987. Gaylord requested personal leave for that day, which fell during the last week of the school year. Principal Steve Barnes denied the request pursuant to the negotiated agreement, which forbade teacher absences the first or last week of any semester. Barnes told Gaylord that Superintendent Kenneth Fowler was the only one who could grant personal leave during that time period. Fowler also denied Gaylord's request.

Gaylord's wife called Barnes on the morning of May 21 and reported Gaylord was ill and would not be at work. Later that day, Fowler received a call from the high school principal in Bovina soliciting a recommendation for Gaylord. From that conversation, Fowler learned Gaylord had been in Bovina that morning.

The following day, Gaylord completed a sick leave form and attached a note from his physician. Fowler called Gaylord to his office, told him he knew about the Texas interview, requested his keys, and told him to leave school property. Gaylord was later notified of the Board's intent to terminate his contract. The reasons given for the Board's action were insubordination, failure to follow Board policy, and abusive treatment of students.

A due process hearing was conducted, and the panel determined, by a two to one vote, that there was just cause to terminate Gaylord's contract on a finding of insubordination based on the May 21, 1987, absence. The hearing panel unanimously concluded there was insufficient evidence of failure to follow

Board policy and insufficient evidence of abusive treatment of students to warrant termination.

Following the statutory mandate to review less than unanimous decisions of a hearing panel, the Board considered the opinion and voted to terminate Gaylord's teaching contract. Gaylord timely perfected his appeal to the district court. The district court affirmed the Board's decision.

On review of a Board's decision, "[t]he district court may not hear the case de novo, but is limited to deciding whether: (1) The Board's decision was within the scope of its authority; (2) its decision was substantially supported by the evidence; and (3) it did not act fraudulently, arbitrarily, or capriciously." *Butler v. U.S.D. No. 440*, 244 Kan. 458, 463, 769 P.2d 651 (1989). We are subject to the same limitations of review as the district court. 244 Kan. at 464.

In order to terminate a tenured teacher, a board of education must follow the procedures set out in K.S.A. 72-5436 *et seq. Bauer v. U.S.D. No. 452*, 244 Kan. 6, 9, 765 P.2d 1129 (1988). K.S.A. 72-5443 provides in relevant part:

"(b) If the members of the hearing committee are unanimous in their opinion, the board shall adopt the opinion as its decision in the matter and such decision shall be final, subject to appeal to the district court as provided in K.S.A. 60-2101, and amendments thereto.

"(c) If the members of the hearing committee are not unanimous in their opinion, the board shall consider the opinion, hear oral arguments or receive written briefs from the teacher and a representative of the board, and decide whether the contract of the teacher shall be renewed or terminated."

Under the facts of this case, since the hearing committee members were unanimous in their opinion on the charge of failure to follow Board policy and on the charge of abusive treatment of students, the Board was required to adopt the committee's opinion and was precluded from considering any evidence as to those issues. K.S.A. 72-5443(b). Considering the committee was not unanimous on the insubordination charge, the Board was required under K.S.A. 72-5443(c) to consider the opinion and decide whether Gaylord's contract should be terminated.

The hearing committee based its recommendation of termination for insubordination on the May 21 absence. Under the statute, the Board should only have considered the hearing com-

mittee's opinion on that issue and rendered its decision on the same. Although the Board may have expanded its reach, the district court only considered the evidence on the issue of insubordination based on the May 21, 1987, incident. As the district court stated:

"Pursuant to K.S.A. 72-5443, when more than one reason is given for nonrenewal or termination of a teacher's contract, and the hearing committee is unanimous on one [or] more reasons but not unanimous on one or more reasons the board of education is required to adopt the unanimous portions of the committee's decision and may make its own decision on the nonunanimous portions."

The only issue to be considered for review by this court is the charge of insubordination. There is no contention that the Board acted outside the scope of its authority but only whether there was substantial evidence to support its finding.

"Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.] Stated in another way, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *Williams Telecommunications Co. v. Gragg*, 242 Kan. 675, 676, 750 P.2d 398 (1988).

Insubordination is defined as "disobedience to constituted authority. Refusal to obey some order which a superior officer is entitled to give and have obeyed. Term imports a wilful or intentional disregard of the lawful and reasonable instructions of the employer." Black's Law Dictionary 720 (5th ed. rev. 1979).

In *Leaming v. U.S.D. No. 214*, 242 Kan. 743, 750 P.2d 1041 (1988), the plaintiff teacher willfully disobeyed the directions of his superintendent and attended a science fair. Leaming admitted he had signed a contract which required him to obey rules and regulations of the board of education and the directions of the superintendent and that he had defied those directions. By absenting himself and by willfully disobeying the directions of the superintendent, Leaming violated his contract and, therefore, was properly terminated.

Although Kansas has not addressed insubordination in the context of teacher termination cases, in other jurisdictions insubordination has been found where the teacher refused to accept a teaching or school assignment, refused to admit a student to class,

or has been absent without authorization. Annot., 78 A.L.R.3d 88.

Some courts have found insubordination in a single incident. See *Crump v. Bd. of Education,* 79 N.C. App. 372, 339 S.E.2d 483, *rev. denied* 317 N.C. 333 (1986). Other courts have concluded insubordination can only occur when there is a constant or persistent course of conduct. See *Sims v. Bd. of Trustees, Holly Springs, Etc.,* 414 So. 2d 431 (Miss. 1982).

In *Ware v. Morgan Cty. School D. No. RE-3,* 748 P.2d 1295, 1300 (Colo. 1988), the court stated that, by interpreting insubordination

"to include the willful or intentional disobedience of a reasonable order on a particular occasion, we provide the school board with the necessary latitude to determine whether, in light of community standards and subject to judicial review, the teacher's conduct on the occasion in question was sufficiently serious or aggravated to warrant an ultimate finding of insubordination and the serious sanction of dismissal."

In *Board of Educ. of Laurel County v. McCollum,* 721 S.W.2d 703 (Ky. 1986), a teacher, McCollum, called in sick and then drove a truck to deliver coal to a neighboring state. On his return, he filed a travel voucher upon which he wrote " 'sick all day' " for the day in question. 721 S.W.2d at 704. He later swore in a notarized affidavit that he was unable to teach that day because of illness. Although he subsequently tried to correct his error, the court upheld his dismissal for conduct unbecoming a teacher which "demonstrates a complete disregard of trust and basic honesty." 721 S.W.2d at 705.

Although Gaylord had not sworn in an affidavit as McCollum had, he nevertheless was less than honest about his absence. The facts show Gaylord attempted to take, and was twice denied, a personal day during a time specifically prohibited by the negotiated agreement. Failing to secure permission, he had his wife call and report his illness on the day in question. He then drove to Texas to interview for a job and, upon his return, filled out an absence sheet claiming illness as the reason for his absence. Under the application of the community standards test articulated in *Ware,* substantial evidence exists to support the finding of insubordination warranting dismissal.

Gaylord's argument that Fowler could have granted his personal leave and that it was granted to other school employees is without merit. The granting of leave is discretionary. In addition, those persons granted leave were not similarly situated. One had been nonrenewed for the coming year, and the other was not a classroom teacher. Neither individual surreptitiously took the day off and then tried to pass it off as sick leave with pay. In fact, both had their pay deducted.

The Board acted within the scope of its authority, there was substantial evidence to support its findings, and there is no evidence that the Board acted fraudulently, arbitrarily, or capriciously. The decision of the district court is affirmed.