No. 46,793

ROBERT KRAHL, *Appellant*, v. UNIFIED SCHOOL DISTRICT No. 497, DOUGLAS COUNTY, STATE OF KANSAS, *Appellee.*

(509 P. 2d 1146)

Opinion filed May 12, 1973.

*Ward D. Martin,* of Crane, Martin, Claussen and Hamilton, of Topeka, argued the cause and was on the brief for the appellant.

*Olin K. Petefish,* of Petefish and Curran, of Lawrence, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Robert Krahl brought this action to compel Unified School District No. 497 to reinstate him as a teacher in Lawrence High School and for damages for his allegedly wrongful discharge from that position. Trial to the court resulted in judgment for the defendant district from which plaintiff has appealed.

The primary issue is whether a letter purporting to give notice of intention to terminate appellant's contract of employment was legally sufficient for that purpose under the continuing contract law (K. S. A. 72-5410 to 72-5412).

In the main the evidence adduced at trial was undisputed. Such factual differences as existed were generally resolved by the trial

court against the appellant in its findings. These findings are not challenged. Hence upon appeal we are bound by them and our factual recitation will be so aligned.

Commencing with the second semester of the 1966-1967 school year appellant Krahl, a validly certificated teacher, was employed by the appellee school district. On March 29, 1968, he entered into a new written contract with appellee whereby he was employed to teach certain classes at Lawrence High School for the 1968-1969 school year at a prescribed salary. Included in his duties were three classes of Remedial English, which assignment appellant had never had before. Appellant taught pursuant to this contract; however, some time prior to March 3, 1969, his principal expressed some dissatisfaction with his work and suggested areas for improvement. Appellant conferred with the principal and with appellee's superintendent, as a result of which he had the impression he was going to be retained as a teacher for the ensuing year upon the same contractual basis.

On March 3, 1969, appellee's board of education voted that contracts not be extended for the 1969-1970 school year for a number of teachers, including appellant. The reason stated in the board's minutes for this action as to appellant was "More time to evaluate". The board's determination was based upon information presented by the administrative staff and upon information received by various board members from the community at large.

On March 5, 1969, the superintendent addressed to appellant a letter which is the crux of this action. This missive, which was received by appellant within a day or two after March 5th, omitting formal parts, was as follows:

"At the regular meeting of the Board of Education, Monday evening, March 3, the Board re-elected most full time teaching personnel for the 1969-70 school year.

"Because of reservations by the Administration concerning the performance of some members of the staff, the Board acted to withhold the extension of their employment for 1969-70 school year at this time. I must advise you that you are in this group. The reasons for this action by the Board have been discussed and outlined in writing for you by Mr. Medley in your evaluative conference. Additional time for evaluation of your performance will enable us to make a final recommendation to the Board relative to your status for next year. This will be done prior to the end of the school year.

"If you have questions concerning your status, please feel free to contact me."

The next day after receiving the letter appellant expressed surprise to his principal that he had received such a letter in view of

previous conversations he had had with the principal about a recommendation for the coming year. Appellant stated the letter was to the effect that a contract would not be issued to him for 1969-1970. The principal also expressed surprise as he had recommended appellant's retention and he advised appellant to appear before the board to ascertain more fully its feeling as to appellant's employment.

Prior to March 15, 1969, appellant conferred with the superintendent and expressed surprise and concern that he had received a letter of termination and that his contract had not been extended for the 1969-1970 school year. The superintendent told appellant that should his performance improve before the conclusion of the school year, possibly a new recommendation could be made on future employment in the district.

Thereafter appellant had further conferences with his principal and on April 9, 1969, wrote a memo to him which stated, among other things, that he was not favorably disposed to work among those who had led the board "to choose not to extend a contract to me at this time." On April 16, 1969, he addressed a lengthy letter to the board president criticizing the school's policies and procedures respecting teacher evaluation, which letter was prefaced with this statement:

"I have received from Supt. Knox a letter dated March 5 advising me that I am numbered among a group of teachers to whom the board decided not to extend employment for the 1969-70 school year 'because of reservations by the Administration concerning the performance of some members of the staff.'"

On May 5, 1969, the principal made a written recommendation to the superintendent that appellant be issued a new contract upon a three-fifths teaching basis for the 1969-1970 year, stating that appellant had shown improvement. The superintendent in turn made the same recommendation to the board but on May 19, 1969, the board declined to offer appellant such a contract. The superintendent, Dr. Knox, communicated this latter action to appellant by letter dated May 23, 1969.

On June 2, 1969, appellant personally appeared before the board to request reconsideration. He read to the board a prepared statement which included the following:

"In Dr. Knox's letter of May 23 I was informed that the Board had again acted not to renew my contract."

The trial court specifically found that appellee had been employed as a teacher in Kansas schools for a number of years prior

to 1968-1969 and on March 5, 1969, he was aware of the nature of the continuing contract law relating to teachers and that "no notice was required unless it related to termination of employment." The trial court concluded that the letter of March 5, 1969, was legally sufficient to terminate appellant's contract of employment and rendered judgment accordingly.

The controlling statute is K. S. A. 72-5411. It provides:

"All contracts of employment of teachers in the public schools in the state, shall continue in full force and effect during good behavior and efficient and competent service rendered by the teacher, and all such contracts of employment shall be deemed to continue for the next succeeding school year unless written notice of intention to terminate the contract be served by the governing body upon any such teacher on or before the fifteenth day of March or the teacher shall give written notice to the governing body of the school district on or before the fifteenth day of April that the teacher does not desire continuation of said contract. Terms of a contract may be changed at any time by mutual consent of both the teacher and the governing body of the school district."

Appellant contends the letter was legally insufficient notice of appellee's intention to terminate his teaching contract. He asserts that legislative intent in enacting 72-5411 was to give stability both to the teachers and to the school boards in planning for an ensuing school year, to allow time for both to make decisions, and that unequivocal notice to the teacher by March 15th was contemplated. He says the purpose of the statute is to eliminate uncertainty and possible controversy as to the teacher's future status and that that policy was frustrated by the procedure used here. Appellant emphasizes the letter in question stated the board was withholding extension of employment *at this time,* that it indicated additional time for evaluation would result in a *final recommendation* and until that final recommendation was made appellant would not know whether he had a job or not and he might not know until just "prior to the end of the school year". He argues that all concerned seemed to understand the March 5th letter was not final action and that there would follow a conclusive determination by the board. Appellant also points out the letter did not follow the language of 72-5411 in that it contained no express statement it was the intention of the board to terminate the contract. He sums up by asserting the most to be gleaned from the letter is notice to appellant the board had not taken any action with respect to his contract and that additional evaluation was necessary before a determination of continued employment could be made.

Appellee concedes the letter was not as harshly direct as it might have been but asserts its language imparted sufficient notification of intention to terminate, particularly when considered in context with appellant's Kansas teaching experience. It also argues appellant's statements after receiving the letter plainly demonstrate that the message of termination came through to him. To appellant's contention the letter was never intended as a final decisive action, appellee responds that the provisions of the continuing contract law were never intended to preclude a school district from terminating a teacher's contract for the ensuing year prior to March 15th and subsequently negotiating a new employment contract with the teacher. With this latter contention, we must agree.

This court has not had occasion to consider the sufficiency of a notice under the continuing contract law. Courts in other jurisdictions have, with varying results primarily because of statutory variation and different wordage used in the particular notices under scrutiny (92 ALR 2d 751, Anno: "Teacher's Contract—Renewal—Notice"). Essentially, that of value which may be gleaned from these decisions from other jurisdictions is summarized in 78 C. J. S., Schools and School Districts, § 197, p. 1066, as follows:

"Where the statute requiring service of a notice not to reemploy fails to prescribe the contents of the notice, any language which may be understood to mean that the teacher is not to be reemployed for the succeeding year is sufficient. Statutes sometimes prescribe the form and contents of the notice. The notice must be in writing where the statute so directs. The notice need not be in the exact language of the statute, but substantial compliance with the statute is sufficient. The notice is sufficient if it fairly informs the teacher that he will not be employed for the succeeding year."

The parties have cited cases applying either strict or liberal statutory construction in favor of a particular side. In appraising our statute we cannot see that any such preference adds to the certainty desirable in such a statute, the obvious purpose of which is to eliminate uncertainty and possible controversy regarding the future status of a teacher and a school with respect to the teacher's continued employment. Our statute prescribes no particular form for notice of intention to terminate and we believe and hold that any language in a timely written notice which fairly and reasonably may be understood to mean that the governing body intends to terminate the contract of a teacher for the ensuing year is sufficient.

The letter in question was dated March 5th, ten days before

the statutory deadline for contract extension, and related to board action taken March 3rd. It was prefaced with the statement the board had reelected most of the full time teaching staff for the ensuing year. It then stated that because of reservations concerning the performance of some, the board had acted to withhold the extension of their employment at that time. Appellant was said to be in this group, for reasons which had been discussed and outlined in writing to him by his principal. The letter continued with the statement that additional time for evaluation would enable the superintendent to make final recommendation to the board relative to appellant's status for the next year and such action would be taken prior to the end of the current school year. The letter concluded with the invitation to consult the writer, the superintendent, if appellant had any questions concerning his status.

We think this letter fairly informed appellant that the contract under which he was then teaching was being terminated so as not to be in effect for the ensuing year. It definitely stated extension of appellant's contract was being withheld, for reasons known to him. The letter did go on to indicate a prospect of reemployment but we cannot say this diluted the essential character of the notice imparted. This indication of possible rehiring was exactly in accord with the superintendent's later oral statement to appellant in his conference with him some time prior to March 15th that should appellant's performance improve before the conclusion of the school year, possibly a new recommendation could be made on future employment in the district. In response to appellant's argument that he would not know until just prior to the end of the school year whether he had a job for the next year, it seems fair to say he was bound to know from the letter that his current contract was being terminated—what was then unknown to him was whether or not he was going to be rehired under a new contract. He was told that any such offer of employment would come prior to the end of the current year. Appellant was an experienced teacher, aware of the Kansas continuing contract law. The only reason for written notice advising of board action shortly prior to March 15th would be to make known the board's position on a teacher's status for the next year under the continuing contract law. Absent notice to the contrary, extension of a contract of employment is automatic and no letter or

notice is necessary. We believe and hold that the language in the letter fairly informed appellant of the board's intention to terminate his contract and therefore was sufficient under 72-5411. Beyond this, it appears that appellant by his oral and written statements subsequent to his receipt of the letter accepted and interpreted it for what we think it fairly was—notice of intention to terminate his contract.

The judgment is affirmed.

APPROVED BY THE COURT.