No. 87,337

IN THE MATTER OF THE DUE PROCESS HEARING OF MARGARETTE MCREYNOLDS, *Appellee*, and NORTH CENTRAL KANSAS TECHNICAL COLLEGE, BELOIT, KANSAS, *Appellant*.

(44 P.3d 391)

Opinion filed April 19, 2002.

*David C. Cunningham*, of Kansas Association of School Boards, of Topeka, argued the cause, and *Don W. Noah*, of the same association, was with him on the briefs for appellant.

*Gene F. Anderson*, of Anderson & Wichman, of Hays, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a teacher discharge case involving a change of circumstances that necessitated a reduction in force. The due process hearing officer concluded that North Central Kansas Technical College's (NCTC) discharge of Margarette McReynolds was unlawful. NCTC appealed the hearing officer's decision to the district court, which affirmed the hearing officer's decision. NCTC appealed the district court's decision. The appeal was transferred from the Court of Appeals to this court on NCTC's motion.

The hearing officer made findings of fact, which were not challenged in the district court and, although quibbled with, are not effectively challenged on this appeal. In the district court, NCTC stated the following two questions of law as the only issues to be decided by the court: 1. May NCTC terminate a tenured instructor

after May 1 for a reduction in force? 2. Does a hearing officer have authority to enter a judgment for interest?

In this court, NCTC has expanded its statement of the issues to three: 1. May NCTC terminate a tenured instructor after May 1 for a reduction in force due to low enrollment? 2. May the hearing officer substitute his or her judgment for that of NCTC as to the date a decision must be made on low enrollment necessitating a reduction in force? 3. Does a due process hearing officer have authority to enter a judgment for interest?

NCTC's brief implies there may be a factual question involved in the second issue, which on its face is a legal question about the scope of the hearing officer's authority. NCTC asserts that the hearing officer ignored evidence and that the record establishes certain things about NCTC's timing. At this stage, however, no factual issue remains, and the second issue articulated by NCTC in this court will be treated as a question of law.

The findings of fact of the hearing officer relevant to our decision are as follows:

"1. On August 31, 1999, Margarette McReynolds and the College entered into a Contract of Employment for Mrs. McReynolds to teach nursing during the 1999-2000 school year at the College for 219 days with a salary of $34,348.18 which included extended hours. The stated term of the contract was from August 2, 1999 thru June 23, 2000. The Contract of Employment specifically incorporates by reference K.S.A. 72-5410 through 72-5445.

"2. The nursing program of the College during the 1999-2000 school year had a staff of three full time teachers and one classified para-professional.

"3. The College is subject to state regulations that require that the number of students to teacher ratio cannot exceed ten to one (10/1 ratio) in the clinical portion of its nursing program.

"4. The College is not subject to such regulation as to the number of students per teacher in the normal classroom instruction portion of its nursing program.

"5. In April of each year the Board of Control of the College reviews all its programs, including the nursing program, for the purpose of assisting the Board of Control in its determination as to whether or not to build up, maintain, reduce, or eliminate a particular course of education at the College.

"6. As part of such review, the Board of Control of the College has set up procedures to solicit and obtain pre-enrollment data as to the various programs intended to be offered by the College.

"7. The April 2000, pre-enrollment data indicated to the College that only 19 students were interested in enrolling in the College's nursing program for the fall

semester of 2000 (down from a class size of 36 for the school year 1999-2000. This pre-enrollment figure of 19 nursing students was cause for alarm by the administration of the College, particularly in view of past pre-enrollment data which showed:

| Pre-enrollment Year | Number of Students |
| --- | --- |
| 1996 | 25 |
| 1997 | 29 |
| 1998 | 34 |
| 1999 | 36 |

From its past experience, however, the College was aware that a more certain knowledge of the number of students actually enrolling for the following fall semester is not available until June or July.

"8. Prior to May 1, 2000, Mrs. Margarette McReynolds was not terminated nor was she notified of any nonrenewal of her contract.

. . . .

"10. Dr. D.W. Reeves considered recommending to the Board of Control of the College that the nursing program be eliminated, largely because of budgetary constraints, but as of June 16, 2000, he decided instead to recommend to the Board of Control that there be a reduction in force in the staff for the nursing program.

"11. Dr. D.W. Reeves decided by June 16, 2000, that the position of the clinical aide would be eliminated. He also determined by that date that the number of full time nursing instructors would be reduced from 3 in the 1999-2000 school year to 2 in the 2000-2001 school year. . . . It was determined by the evaluation process that the other instructor's evaluations were superior to that of Mrs. McReynolds. . . . The decision of the College's administrators and Board of [Control] was motivated entirely by the low enrollment of students in the nursing program with the resulting budgetary constraints.

"12. On June 16, 2000, Dr. D.W. Reeves verbally informed Mrs. McReynolds that for the 2000-2001 school year, her contract would be reduced to part-time status. This was the first notice that Mrs. McReynolds had received on the subject.

"13. On June 23, 2000, Dr. D.W. Reeves called Mrs. McReynolds to his office and handed her a piece of paper upon which he had written: 'I hereby resign my full-time in exchange a contract 101 days (sic)', and, requested that Mrs. McReynolds sign it. She refused.

"14. On June 23, 2000, Mrs. McReynolds prepared, and posted by certified mail, a letter to the Board of Control and Dr. D.W. Reeves in which she objected to the termination of her full-time employment and setting forth the basis for her objection, to-wit: 'Please be informed that you are unable to do this because prior notification was not given on or before May 1.'

"15. On June 24, 2000, at a regularly scheduled meeting of the Board of Control of the College, Dr. D.W. Reeves recommended that the Board of Control reduce

staff in the College's nursing program and the Board of Control approved the same.

"16. After this June meeting of the Board of Control, the employment of the one clinical aide was terminated, and on June 26, 2000, Mrs. McReynolds was again verbally notified that her contract for the year 2000-2001 school year was to be reduced from 219 days to 101 days.

"17. On July 24, 2000, the Board of Control of the College adopted a resolution to terminate Mrs. McReynolds' contract of employment for the following reason: 'A reduction in force due to low enrollment.'

"18. On July 25, 2000, the College thru Dr. D.W. Reeves notified Mrs. McReynolds in writing that her contract of employment for 2000-2001 was terminated and offered her a new contract of employment for 101 hours.

"19. Mrs. McReynolds has been teaching at the College under the College's 101 days contract of employment which it proffered and which she has refused to sign.

"20. Mrs. McReynolds sought relief by invoking her right to a due process hearing which has led to this hearing. There is no issue concerning notice, or lack thereof, in regard to her due process hearing request.

"21. As of commencement of school in August of 2000, the actual enrollment in the College's nursing program was 31."

The hearing officer concluded that McReynolds was improperly discharged and that she should be paid the difference between what she would have been paid for full-time teaching and what she received for part-time employment during the 2000-2001 school year, plus interest. The district court affirmed. We review the hearing officer's decision as though the appeal had been made directly to this court. See *U.S.D. No. 500 v. Robinson*, 262 Kan. 357, 361, 940 P.2d 1 (1997). Our review of the due process hearing officer's decision is limited to deciding if: (1) the hearing officer's decision was within the scope of his or her authority; (2) the hearing officer's decision was supported by substantial evidence; and (3) the hearing officer did not act fraudulently, arbitrarily, or capriciously. 262 Kan. 357, Syl. ¶ 1.

The contractual relationships of teachers and boards of education are governed by a statutory scheme, which includes K.S.A. 2001 Supp. 72-5411(a) on the continuation of teachers' contracts:

"All contracts of employment of teachers in the public schools in the state shall continue in full force and effect during good behavior and efficient and competent service rendered by the teacher, and all contracts of employment shall be deemed to continue for the next succeeding school year unless written notice of intention

to terminate a contract of employment is served by a board of education upon any teacher on or before May 1. A teacher shall give written notice to the board of education of a school district that the teacher does not desire continuation of a contract of employment on or before May 15 or, if applicable, not later than 15 days after final action is taken by the board of education upon termination of professional negotiation absent a binding agreement under article 54 of chapter 72 of Kansas Statutes Annotated, whichever is the later date."

## K.S.A. 72-5412 provides:

"All contracts shall be binding on both the teacher and board of education of the school district until the teacher has been legally discharged from such teacher's teaching position or until released by the board of education from such contract. Until such teacher has been discharged or released, such teacher shall not have authority to enter into a contract with the board of education of any school district for any period of time covered in the original contract."

## K.S.A. 2001 Supp. 72-5437(a) provides:

"All contracts of employment of teachers . . . shall be deemed to continue for the next succeeding school year unless written notice of termination or nonrenewal is served as provided in this subsection. *Written notice to terminate a contract may be served by a board upon any teacher prior to the time the contract has been completed, and written notice of intention to nonrenew a contract shall be served by a board upon any teacher on or before May 1.* A teacher shall give written notice to a board that the teacher does not desire continuation of a contract on or before May 15 or, if applicable, not later than 15 days after final action is taken by the board upon termination of professional negotiation absent a binding agreement under article 54 of chapter 72 of Kansas Statutes Annotated, whichever is the later date." (Emphasis added.)

The hearing officer concluded that NCTC's termination of McReynolds' contract was improper. The hearing officer reasoned as follows:

"The Board of Control has interpreted the words: 'Written notice to terminate a contract may be served by a board upon any teacher prior to the time the contract has been completed,' to mean that it has the absolute right of termination at any time after May 1 for 'good cause', in this instance, the good cause of the necessity for reduction in force. . . .

"The Board of Control appears to be using this phrase at issue to negate the notice deadline of May 1 by equating its good cause for reduction in force to discharge for teacher misconduct. Teacher misconduct is not at issue here. I again look to *Gillett v. U.S.D. 276* [, 227 Kan. 71, 605 P.2d 105 (1980),] for guidance. I direct the attention of the parties specifically to page 75, 76 and 77 of the opinion. After review of *Gillett*, I believe that the Court in this particular matter would

require a due process hearing officer to determine whether or not the good cause for termination given by the Board of Control is closely connected to Mrs. Mc-Reynolds' conduct. As no such misconduct on the part of the teacher exists, then the due process requirements inherent in K.S.A. 72-5436 *et seq.* causes the focus to shift to the continuing contract provisions as set forth in K.S.A. 72-5411 and -5412."

Within the Kansas statutory scheme, a tenured teacher such as McReynolds may be nonrenewed only if good cause is shown. See *Coats v. U.S.D. No. 353*, 233 Kan. 394, 397, 662 P.2d 1279 (1983). In this case, NCTC's knowledge in April 2000 that only 19 students had preenrolled for nursing classes in the fall constituted good cause to nonrenew McReynolds' contract. NCTC did not give McReynolds written notice on or before May 1 of its intention to nonrenew her contract, as required by our statutes. Under the Kansas continuing contract law, NCTC's inaction effectively renewed McReynolds' contract.

NCTC's position is that it is statutorily authorized to terminate McReynolds' renewed contract at any time. Thus, its argument continues, by terminating McReynolds' 2000-2001 contract on July 25, 2000, NCTC acted within its statutory authority and in good faith. NCTC relies on a literal reading of the sentence in K.S.A. 2001 Supp. 72-5437(a) that is italicized in the previously quoted section.

That sentence in K.S.A. 2001 Supp. 72-5437(a) is one of many that govern teachers' contracts. In construing statutes and determining legislative intent, several provisions of an act, *in pari materia*, must be construed together with the aim of reconciling and bringing them into workable harmony if possible. *State v. Bolin*, 266 Kan. 18, 24, 968 P.2d 1104 (1998). We have seen that a principal tenet of the Kansas statutory scheme is that teachers' contracts continue in the absence of action to stop them. See K.S.A. 2001 Supp. 72-5411. Teachers and schools alike are bound by the continuing contract law. K.S.A. 2001 Supp. 72-5411 requires a school to act by May 1 and a teacher to act by May 15 to prevent contract renewal. K.S.A. 72-5412 provides that before a teacher is discharged or released, he or she has no authority to enter into a contract with another school and that doing so without authority

subjects a teacher to suspension of his or her certificate. This scheme promotes stability in the state's schools and affords a time when teachers and schools may match needs. Teachers whose contracts will not be renewed are seeking employment for the next school year at the same time as schools that have received notice of teacher nonrenewal are seeking to fill positions, and both teachers and schools have time to make new arrangements before the next school year begins.

Uncertainty under the continuing contract law is minimized, but there is an escape clause in K.S.A. 72-5412 that makes renewed contracts voidable in the event that a school's public hearing on its budget should occur after renewal of contracts and the budget does not include adequate funds for the compensation provided for in the contracts. NCTC does not claim that it fits within this exception to the law.

NCTC knew in April 2000 that enrollment in the nursing program projected for fall 2000 was down to 19 students from 36 preenrolled students for 1999. According to the hearing officer, NCTC's decision to discharge McReynolds was motivated entirely by the low enrollment of students in the nursing program. Although NCTC knew in April to expect low enrollment of nursing students, it waited until July 25 to give McReynolds written notice that she would not be employed full time by NCTC during the 2000-2001 school year, which began in August. By delaying its action, NCTC caused McReynolds to miss a significant portion of the period used by teachers seeking schools and schools seeking teachers to find a match.

The statutory due process procedure is available to any tenured teacher who receives a notice of nonrenewal or termination. See K.S.A. 2001 Supp. 72-5445(b); K.S.A. 72-5439; K.S.A. 72-5438. At a due process hearing, the school bears the burden of proving that its reasons for interrupting the otherwise continuing contract of the teacher constitute good cause. In *Gillett v. U.S.D. No. 276,* 227 Kan. 71, 78, 605 P.2d 105 (1980), the court described the purpose of the due process hearing as being "to develop the grounds that have induced the board to give the teacher notice of its desire to discontinue her services, and to afford the teacher an opportunity

to test the good faith and sufficiency of the notice." The court held that

"under the Kansas due process statute . . . a tenured teacher may be terminated or nonrenewed only if good cause is shown, including any ground which is put forward by the school board in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the school board's task of building up and maintaining an efficient school system." 227 Kan. at 78.

The hearing officer concluded that NCTC acted with good cause in determining that a reduction in force was necessary and in selecting McReynolds as the teacher to be released from among the nursing teachers. The hearing officer, however, concluded that NCTC acted without good cause by delaying until July 25, 2000, to act on the necessity of reducing the number of nursing teachers that had been "clearly evident" to NCTC since April 2000. According to the hearing officer, NCTC's termination of McReynolds in July substantially reduced her opportunity to seek viable alternative employment, "particularly as is the case here, where the number of schools offering a specialized course of instruction are severely limited." In other words, NCTC's termination of McReynolds in July despite knowing in April of the necessity of a reduction in force defeated the purpose of the statutory scheme: "The purpose of the continuing contract law is to eliminate uncertainty and possible controversy regarding the future status of a teacher and a school with respect to the teacher's continued employment." *Krahl v. Unified School District*, 212 Kan. 146, Syl. ¶ 2, 509 P.2d 1146 (1973).

The hearing officer's decision that NCTC acted without good cause is not unauthorized or unsupported by evidence or fraudulent, arbitrary, or capricious. The hearing officer determined that NCTC would have been acting with good cause if it had given McReynolds written notice on or before May 1 of its intention to nonrenew her contract. By waiting so long after knowing that a reduction in force was necessary before giving McReynolds written notice of termination, NCTC skewed the statutory scheme so that it served the school's need but did not serve McReynolds' need. As the hearing officer noted, McReynolds was deprived of the full opportunity contemplated under the statute for obtaining another

teaching position. The statutory scheme binds and benefits teachers and schools alike. NCTC knew in April of the change in circumstance that required discharging one of the nursing teachers, but NCTC allowed the May 1 deadline for giving written notice of its intention not to renew to pass without action. If McReynolds had been given written notice by May 1, she would have had 3 full months to seek other employment. Under Kansas law, McReynolds' contract with NCTC was automatically renewed, and NCTC gave no indication that it did not intend to honor the contract. In mid-June she was told that her contract would be reduced to part-time, but she objected. She received no written notice that her full-time status was terminated until July 25, 2000, which was only 7 days before the 2000-2001 contract year began. McReynolds then accepted part-time employment with NCTC for the 2000-2001 school year but refused to sign a contract. NCTC created a situation where it could cut McReynolds' salary in half and still meet the required 10-to-1 student-to-teacher ratio for the clinical portion of the nursing program. The hearing officer believed that NCTC's conduct unreasonably deprived McReynolds of a practical opportunity to find a full-time teaching position. NCTC's unreasonable conduct is inconsistent with acting with good cause. To hold otherwise would render K.S.A. 2001 Supp. 72-5411(a) meaningless.

Nonrenewal and termination are differentiated in K.S.A. 2001 Supp. 72-5437(a) by procedural requirements. The hearing officer's application of the statutory scheme in the present case respects the difference. The change of circumstances in this case was NCTC's learning in April 2000 that the number of nursing students who had pre-enrolled for fall 2000 classes was 19, down from 36 preenrolled students in 1999. The hearing officer found that NCTC had good cause in April 2000 to nonrenew McReynolds' contract. NCTC, however, did not react to its change in circumstances at that time. Although it knew of the change in circumstances in time to give McReynolds notice of its intention not to renew her contract by May 1, NCTC allowed her contract to be renewed under the law. The hearing officer found that NCTC's termination in July due to the change of circumstance that it knew

of in April was unreasonable due to the pernicious effect of the delay on McReynolds, which the statutory scheme was intended to avoid. We find the hearing officer's reasoning and decision are consistent with the statutory differentiation between nonrenewal and termination.

NCTC also contends that a hearing officer cannot substitute his or her judgment for that of the NCTC Board as to the date a decision must be made on low enrollment necessitating a reduction in force. NCTC's position is that it alone has the authority to decide when an employee should be terminated. Under an earlier statutory procedure, see *Gillett*, 227 Kan. at 79, the school's judgment was authoritative in certain circumstances. The 1991 statutory amendment shifted authority to make the final good cause determination to an independent hearing committee, and the 1992 amendment authorized the hearing officer to make that determination. See *Robinson*, 262 Kan. at 363. In the statutory scheme that has been in effect for 10 years, there is no merit to the argument that the hearing officer, who is empowered to make the final good cause determination, cannot substitute his or her judgment for that of the school.

NCTC's final contention is that a hearing officer does not have authority to enter a judgment for interest. The hearing officer awarded interest to McReynolds "on the difference between the full time contract salary and the part time contract salary at the statutory rate until paid." NCTC contends that the hearing officer had neither express nor implied authority to do so.

McReynolds argues that the authority to award interest is an inherent or implied power of a hearing officer and that her property right in continued employment will not be fully restored unless NCTC pays interest for depriving her of the use of her contract proceeds.

Both arguments miss the point in that McReynolds is entitled to prejudgment interest under K.S.A. 16-201, which provides:

"Creditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the account and ascertaining the balance; for money received

for the use of another and retained without the owner's knowledge of the receipt; for money due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts;. for all other money due and to become due for the forbearance of payment whereof an express promise to pay interest has been made; and for money due from corporations and individuals to their daily or monthly employees, from and after the end of each month, unless paid within fifteen days thereafter."

The general rule is that prejudgment interest is allowable pursuant to K.S.A. 16-201 unless the claim for damages is unliquidated. "This court has defined liquidated as follows: 'A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation.' [Citation omitted.]" *Kansas Baptist Convention v. Mesa Operating Ltd. Partnership*, 258 Kan. 226, 246, 898 P.2d 1131 (1995). The amount of back pay due to McReynolds from NCTC was easily calculated, and she is entitled under the statute to interest on it. Moreover, there is precedent in our cases for an award of back pay plus interest to a wrongfully discharged teacher. See *Coats*, 233 Kan. at 404. The trial court was correct in affirming the decision of the hearing officer.

The judgment of the district court is affirmed.