No. 90,240

JOHN D. KRIDER, *Appellant*, v. BOARD OF TRUSTEES OF
COFFEYVILLE COMMUNITY COLLEGE, MONTGOMERY COUNTY,
KANSAS, *Appellee*.

(83 P.3d 177)

Opinion filed January 30, 2004.

*David M. Schauner*, of Kansas National Education Association, of Topeka, argued the cause, and *Marjorie A. Blaufuss*, of the same association, was with him on the briefs for appellant.

*Teresa L. Sittenaur*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause, and *J. Steven Pigg* and *Kristine A. Polansky*, of the same firm, were with her on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Plaintiff John D. Krider appeals the district court's summary judgment in favor of the defendant Board of Trustees of

Coffeyville Community College (Board), contending the Board's violation of the Kansas Open Meetings Act, K.S.A. 75-4317 *et seq.*, voided a notice of nonrenewal of his teaching contract.

The legally relevant facts are undisputed.

Krider was a tenured welding instructor at the Southeast Kansas Area Vocational Technical School when the school merged with Coffeyville Community College in July 2001. After the merger, Krider's status changed to a first-year, nontenured employee of the college.

During an April 15, 2002, executive session of the college's Board of Trustees, the Board president recommended that Krider's contract not be renewed for the 2002-2003 academic year. As a result, Krider received a nonrenewal letter signed and delivered by the vice president for the college's technical division on May 1, 2002. In addition to telling Krider that his contract would not be renewed, the letter said: "This correspondence is your official notification of this fact and is given in accordance with K.S.A. 72-5437 and amendments thereto." The Board did not vote in open session not to renew Krider's contract until June 17, 2002.

On July 8, 2002, Krider filed this declaratory judgment action, asking the district court to rule that the Board failed to take the timely public action legally required to nonrenew his teaching contract. Krider continues to pursue this argument on appeal. In addition, he argues that a letter signed and delivered by the vice president of the technical division does not constitute service by the Board, as required by K.S.A. 72-5437(a).

K.S.A. 72-5437(a) states in pertinent part:

"All contracts of employment of teachers . . . shall be deemed to continue for the next succeeding school year unless written notice of termination or nonrenewal is served as provided in this subsection. Written notice to terminate a contract may be served by a board upon any teacher prior to the time the contract has been completed, and written notice of intention to nonrenew a contract shall be served by a board upon any teacher on or before May 1."

The relevant portions of the Kansas Open Meetings Act provide:

"(a) . . . [A]ll meetings for the conduct of the affairs of, and the transaction of business by, all legislative and administrative bodies and agencies of the state and political and taxing subdivisions thereof, including boards . . . receiving or

expending and supported in whole or in part by public funds shall be open to the public and no binding action by such bodies shall be by secret ballot." K.S.A. 2002 Supp. 75-4318.

"(a) Upon formal motion made, seconded and carried, all bodies and agencies subject to the open meetings act may recess, but not adjourn, open meetings for closed or executive meetings. . . . Discussion during the closed or executive meeting shall be limited to those subjects stated in the motion.

"(b) No subjects shall be discussed at any closed or executive meeting, except the following:

(1) Personnel matters of nonelected personnel;

. . . .

"(c) No binding action shall be taken during closed or executive recesses, and such recesses shall not be used as a subterfuge to defeat the purposes of this act." K.S.A. 2002 Supp. 75-4319.

"(a) Any member of a body or agency subject to this act who knowingly violates any of the provisions of this act . . . shall be liable for the payment of a civil penalty in an action brought by the attorney general or county or district attorney . . . . In addition, any binding action which is taken at a meeting not in sub-stantial compliance with the provisions of this act shall be voidable in any action brought by the attorney general or county or district attorney in the district court of the county in which the meeting was held within ten (10) days of the meeting, and the court shall have jurisdiction to issue injunctions or writs of mandamus to enforce the provisions of this act." (Emphasis added.) K.S.A. 75-4320.

"(a) The district court of any county in which a meeting is held shall have jurisdiction to enforce the purposes of K.S.A. 75-4318 and 75-4319, and amend-ments thereto, with respect to such meeting, by injunction, mandamus or other appropriate order, on application of any person." K.S.A. 75-4320a.

This appeal requires us to interpret these statutory provisions. Statutory interpretation raises issues of law, and our review is therefore unlimited. See *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003).

"The fundamental rule of statutory construction to which all other rules are sub-ordinate is that the intent of the legislature governs if that intent can be ascer-tained. The legislature is presumed to have expressed its intent through the lan-guage of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Williamson*, 275 Kan. at 305.

"The purpose of the [teachers'] continuing contract law," of which K.S.A. 72-5437(a) is a part, "is to eliminate uncertainty and possible controversy regarding the future status of a teacher and a

school with respect to the teacher's continued employment." *In re Due Process Hearing of McReynolds*, 273 Kan. 514, Syl. ¶ 1, 44 P.3d 391 (2002). The statutory "scheme promotes stability in the state's schools and affords a time when teachers and schools may match needs." *McReynolds*, 273 Kan. at 520. It enables schools to search for new teachers while teachers are seeking employment from schools. 273 Kan. at 520.

This policy is satisfied when a teacher receives unambiguous notification of nonrenewal by the May 1 deadline. Any language in a timely written notice that fairly and reasonably may be understood to mean that a school's governing body is nonrenewing a teacher's contract is sufficient. See *Krahl v. Unified School District*, 212 Kan. 146, Syl. ¶ 3, 509 P.2d 1146 (1973) (interpreting companion statute, K.S.A. 72-5411).

There is no dispute in this case that Krider received a clear and unconditional notice before the statutory deadline passed. Further, we are not persuaded that a letter signed and delivered by a college vice president at the direction of a Board of Trustees does not qualify as service of notice by the Board itself. The letter delivered to Krider specifically stated that it was meant to be understood as the notice from the Board that is required by K.S.A. 72-5437, and we have previously held that a letter from a school superintendent was legally sufficient. See *Krahl*, 212 Kan. 146, Syl. ¶ 4. The chairman or president or another member of the Board need not sign or personally deliver the written notice required by the statute.

Krider's Open Meetings Act argument also will not get him the reinstatement and back pay that he seeks. Although the undisputed facts support his characterization of the Board's action as a violation of the Act, he seeks unavailable remedies.

We stated our interpretation of the statutory contours of a private party's standing to sue and the limited remedies he or she may seek for violation of the Open Meetings Act in *Stoldt v. City of Toronto*, 234 Kan. 957, 678 P.2d 153 (1984).

In *Stoldt*, the City Council of Toronto fired the plaintiff from his night watchman position, even though his job status had not been listed on a public agenda and the Council's vote appeared to have been prearranged in a private setting. We held:

"Private parties, as well as the attorney general, district attorneys and county attorneys, have standing under the Kansas Open Meetings Act, K.S.A. 75-4317 *et seq.*, to seek injunctive and mandamus relief. Only the attorney general, district attorneys and county attorneys, however, may seek voidance of governmental action based on violations of the act." 234 Kan. 957, Syl. ¶ 1.

We further explained:

"[The Act], while authorizing suits brought by the attorney general, county and district attorneys for violations, does not preclude private party actions. The policy of the act as stated in K.S.A. 75-4317 also supports members of the general public having standing to sue thereunder.

. . . .

"[The Act] provides for civil penalties up to $500 and voidance of binding actions taken during a meeting in violation of the act. However, these remedies are available only to the attorney general and county and district attorneys. [The Act] also provides for injunctive and mandamus relief by the court to enforce the act. See K.S.A. 75-4320(a). Standing to seek these remedies is not limited. We therefore, conclude injunctive and mandamus relief is available to private parties as well as to public prosecutors.

"In this case Officer Stoldt seeks voidance of the city council's action, reinstatement, and monetary damages. He does not seek an injunction or a writ of mandamus. While appellant has standing to raise the issue of violation of [the Act], none of the remedies he seeks is available to a private individual. . . . [Earlier cases involving private parties raising other issues did not reach the remedies point and are not] precedent for a private party having standing to void governmental action for a . . . violation [of the Act].

"Rather, we construe [the Act] to authorize no one other than the attorney general, district attorneys or county attorneys to seek voidance of governmental action based on violations of the act. It is with good reason the legislature would so restrict the act. Voidance of governmental action, be it administrative or legislative, is a drastic remedy. The threat of it would be very unsettling. The restriction on the remedy provides governmental stability. A private person who feels aggrieved must first convince a prosecutor of the merits of his cause within ten days of the . . . violation and get the prosecutor to seek voidance to undo the governmental acts. See K.S.A. 75-4320(a). It would be most difficult for government to function if every person was vested with the remedy of voiding governmental action for a violation . . . . Such actions, even though possibly ultimately unsuccessful, would unreasonably tie up government. We hold an individual who seeks to enforce [the Act] through private litigation has only the remedies of mandamus and injunction, both of which have prospective application." 234 Kan. at 962-63.

We echoed *Stoldt*'s analysis in 1998 in *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 959 P.2d 894 (1998). In

that case, we first observed that Watertower Place Development Group (Watertower) correctly asserted that the City had violated the Open Meetings Act by terminating the parties' contract during an executive session of the City Council. The issue thus became whether the City's employment of an unlawful procedure authorized the court to void the action in a lawsuit by Watertower. 265 Kan. at 156-57.

Noting that the attorney general had rebuffed Watertower's request for the attorney general to sue because the request came later than the 10-day deadline, we held Watertower was thereafter "precluded from seeking the voidance" of the Council's action. Notwithstanding the violation of the Open Meetings Act, Watertower was powerless to reverse the substance of the City Council's decision. 265 Kan. at 157 (citing *Stoldt*, 234 Kan. 957, Syl. ¶ 1).

Like Stoldt and Watertower, Krider seeks to reverse the substance of the Board's decision in his case, *i.e.*, to void its service of notice of nonrenewal of his contract. Under the Open Meetings Act and our prior decisions, this is not possible. When the Board violated the Open Meetings Act, its action was voidable for 10 days. See Annot., 38 A.L.R.3d 1070, § 7[b] (recognizing *Stoldt's* holding). Krider could have persuaded the attorney general or the district or county attorney for Coffeyville to file an action to void the notice. He had no power to seek that remedy himself. He had standing to sue only for an injunction or writ of mandamus. He did not. Now it is too late.

We are mindful of the Open Meetings Act's explicit underlying policy to ensure that meetings "for the conduct of governmental affairs and the transaction of governmental business" are open to the public and of its explicit disapproval of the adjournment of such meetings "to another time or place in order to subvert" this policy. K.S.A. 2002 Supp. 75-4317. However, the Act also explicitly sets limits on the remedies available for a violation and the persons who may seek them. The rationale for such limitations is as valid today as it was when *Stoldt* was written in 1984.

Affirmed.