(224 P.3d 1201)
No. 101,891

Dr. Ruth J. Heflin, *Appellant,* v. Kansas City Kansas
Community College, *Appellee.*

Opinion filed February 26, 2010.

*Steven W. Cavanaugh* and *Scott A. Grosskreutz,* of Cavanaugh & Lemon, P.A., of Topeka, for appellant.

*Douglas M. Greenwald,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellee.

Before Rulon, C.J., Elliott and Hill, JJ.

RULON, C.J.: The petitioner, Dr. Ruth J. Heflin, appeals the due process hearing officer's decision upholding respondent Kansas City Kansas Community College's (KCKCC) decision to terminate petitioner's employment. We affirm.

## UNDERLYING FACTS

When the events giving rise to this action occurred, petitioner had been employed as an associate professor of English at KCKCC for about 10 years. KCKCC has a main campus in Kansas City, Kansas, and a satellite campus in Leavenworth, Kansas, and offers on-line courses in which the teaching is all done via a computer.

In the 5 years leading up to the fall 2007 semester, petitioner had taught primarily on-line courses. To the extent petitioner taught "on-ground" classes, *i.e.*, in a classroom on campus, petitioner taught exclusively at the Leavenworth campus. At the start of the spring 2006 semester there was an agreement reached among petitioner, her supervising dean, and the director of the Leavenworth campus that petitioner's office would be located at the Leavenworth campus. Because of petitioner's office designation, she requested mileage reimbursement for her trips between Leavenworth and the main campus in Kansas City, Kansas, for committee meetings and curriculum preparation. Leota Marks, KCKCC's Dean of Human Resources, denied petitioner's requested mileage reimbursement because, at the time, petitioner was teaching all on-line classes and the requested reimbursement did not fall within the provost's administrative procedures. Specifically, Marks referred to the following prohibition: " 'Full time faculty are not paid to drive from their home to their designated work site.' " Petitioner objected to Marks' refusal to approve petitioner's mileage reimbursement request because petitioner's understanding was that petitioner's designated work site was the Leavenworth campus. Petitioner contended she should be paid mileage for her trips between the Leavenworth campus, as her designated work site, and the main campus in Kansas City, Kansas.

Through a series of e-mails sent in September and October 2006, the disagreement between petitioner and Marks over the mileage reimbursement escalated. Marks continued to refuse to pay the

mileage on the ground petitioner's travel was not between work destinations. Petitioner complained of bias against the Leavenworth campus as the "poor sister" and against on-line faculty, and ultimately threatened to file a grievance over the mileage issue unless her mileage request was paid and the mileage policy was revised to allow for reimbursement to faculty who drove to the Kansas City campus from the Leavenworth campus to attend meetings.

According to petitioner, Marks eventually approved petitioner's reimbursement request in an amount close to $234. In July 2006, a new master contract between the Board of Trustees and faculty of KCKCC went into effect, covering the period of July 1, 2006, to June 30, 2009. A significant new requirement in this contract was the following provision related to professional work load:

"No work load will exceed thirty (30) semester hours for the two-semester academic year. The load will consist usually of between thirteen (13) and seventeen (17) hours of instruction per semester, together with at least 10 clock hours per week of regularly scheduled office hours for student conferences, paper checking, supervision and preparation.

"Professional Employees who teach at off-campus sites may keep office hours where they meet students. Such office hours should be for the benefit of the off-campus students. For those Professional Employees who teach online courses, no less than 50% of the required office hours shall be held on campus. Office hours of Professional Employees shall not interfere with the responsibilities of Professional Employees to participate in campus-based activities. Faculty will make arrangements with supervisors for participation in campus-based activities, including but not necessarily limited to division meetings and in-services."

On December 13, 2006, KCKCC Provost Morteza Ardebili notified petitioner via e-mail that petitioner's assigned work destination and office location, effective January 8, 2007, would be at the main campus in Kansas City, Kansas.

On January 9, 2007, petitioner filed a grievance challenging the provost's action in changing petitioner's work destination and office to the main campus. Petitioner's grievance was forwarded from Level Three (Faculty Unit Grievance Committee) to Level Four (College President), where petitioner's remedy sought: "To restore the Grievant's 'work destination' and office as the Leavenworth campus, as per the agreement made between the former Dean of

Humanities, the Executive Director of the Leavenworth Center, and the Grievant in January 2006."

Petitioner's grievance was denied at Level Four in February 2007 and petitioner appealed to Level Five (Board of Trustees). Although the Board of Trustees ultimately issued a final determination sustaining the Level Four denial of petitioner's grievance, the issuance of the determination occurred after the deadline for such determination, and petitioner claimed to have won the grievance based on the untimeliness of the Board of Trustees' determination. Petitioner claimed she won her grievance and was entitled to have her office officially located at the Leavenworth campus.

In late June 2007, petitioner sent the Board of Trustees a memorandum stating petitioner's understanding that the Board of Trustees had failed to respond to the grievance within the proper time limit and petitioner's remedy should be granted. Petitioner stated: "Therefore, I will continue to maintain my office at the Leavenworth campus, as per the agreement made between the former Dean of Humanities, the Executive Director of the Leavenworth Center and myself in January 2006."

The Board of Trustees responded with a letter disagreeing with petitioner's interpretation, maintaining petitioner's grievance was properly and timely denied, and informed petitioner her "primary place of duty will be the main campus in Kansas City, Kansas, not the Leavenworth facility." Eventually, petitioner's contract was renewed for the July 1, 2007—June 30, 2008, contract year in accordance with the terms and conditions of the master contract.

For the fall 2007 semester, petitioner was assigned to teach four on-line courses and one course at the main campus in Kansas City, Kansas. Petitioner was not assigned to teach any courses at the Leavenworth campus. Before classes started for the fall 2007 semester, petitioner's new supervising dean, Tamara Agha-Jaffar, learned petitioner had turned in her office key for the Kansas City campus and intended not to hold office hours on the Kansas City campus during the semester. Agha-Jaffar e-mailed petitioner on August 9 to confirm petitioner's intentions. Petitioner replied her office was located at Leavenworth, per petitioner's grievance rem-

edy, where she would be holding part of her on-ground office hours. Petitioner stated she would arrange office hours in or near the classroom, before or after class, for students in her class on the Kansas City campus.

Agha-Jaffar responded that petitioner's office hours arrangement did not make sense, because petitioner was not teaching any courses at the Leavenworth campus that semester. Agha-Jaffar expressed concern petitioner would not be serving her Kansas City students well by meeting "in the hallway" before or after class, noting petitioner's classroom hosted another class immediately following petitioner's class. Agha-Jaffar noted the master contract required 5 hours of on-ground office hours for the purpose of meeting with on-ground students. Agha-Jaffar directed petitioner to hold office hours at the Kansas City campus and suggested petitioner could do so before and after petitioner's class to minimize any burden on petitioner.

Petitioner told Agha-Jaffar to reconsider the order directing petitioner to hold office hours at the main campus in light of petitioner's grievance victory, or else the issue would "go directly to court." Petitioner told Agha-Jaffar to contact petitioner's attorney before "attempting any such Breach." Petitioner then told Agha-Jaffar that petitioner only had to hold 17% of her on-ground office hours at the Kansas City campus, which represented the equivalent percentage of her on-ground class to petitioner's total teaching load. Agha-Jaffar informed petitioner, "You have left me no choice but to forward your decision to the Provost, Dr. Morteza Ardebili," and petitioner again responded, "[Y]ou should contact my attorney."

On August 13, 2007, Provost Ardebili e-mailed petitioner to inform petitioner he had received copies of petitioner's e-mail correspondence with Dean Agha-Jaffar. The provost reiterated that, per the master contract, petitioner was required to hold 5 office hours per week on campus. The provost continued:

"Furthermore, since your station has been designated as the KCKCC main campus, you are not permitted to have an office at the Leavenworth Center. You are hereby directed to hold your five office hours per the KCKCC Master Contract on the main campus.

"If I am not informed in writing by noon Tuesday, August 14, 2007, that you have complied with this directive, I will immediately recommend your termination to President Tom Burke and the KCKCC Board of Trustees."

On August 14, petitioner replied: "As I told Dean Agha-Jaffar, and as I have been instructed to tell everyone who questions my winning of my grievance about this very issue (of where my office is located), you may contact my attorney[.]" The same day, Dean Leota Marks mailed petitioner a letter informing petitioner her employment with KCKCC had been suspended without pay, pending termination, due to petitioner's refusal to comply with the expectations and directives of her dean and the provost.

Petitioner requested a review of her suspension by the Board of Trustees, stating petitioner's belief the directives regarding petitioner's office hours were in violation of the remedy petitioner had received via her grievance.

On October 11, 2007, the Board of Trustees adopted a resolution of intent to terminate petitioner's employment, setting forth the following reasons for termination:

"a) That Ruth J. Heflin was insubordinate by refusing to accept the reasonable and proper work assignment from her supervisor concerning the location of her office.

"b) Her office had been assigned at the main campus of Kansas City Kansas Community College, and according to the Master Contract, 'For those Professional Employees who teach online courses, no less that [sic] 50% of the required office hours (i.e. five hours per week) shall be held on campus.'

"c) In spite of repeated attempts on behalf of the Dean of Humanities and Fine Arts and the Provost to resolve the issue, Ruth Heflin blocked the channel of communication."

Petitioner was provided with notice of the resolution and was informed of her opportunity to request a hearing before a hearing officer. Eventually petitioner requested a due process hearing.

The hearing was held on January 25 and 29, 2008. The witnesses at the hearing included Agha-Jaffar, Marks, Ardebili, and the petitioner. KCKCC provided 100 exhibits and petitioner provided nearly 30 exhibits. Most of the exhibits consisted of letters and e-mails between the parties and minutes of various Board of Trustees meetings.

On March 25, 2008, the due process hearing officer issued his decision. The hearing officer set forth 12 relevant facts before engaging in a detailed discussion of the case. The hearing officer found "neither party comes to this case with clean hands," citing petitioner's history of conflict and confrontation and KCKCC's failure to timely respond to petitioner's grievance.

While recognizing petitioner achieved a "technical win" as to her grievance, the hearing officer found the win was limited in scope to petitioner's contract for the fall 2006-spring 2007 school year, when petitioner was teaching all courses on-line or at the Leavenworth campus. The hearing officer found the college's provost retained the sole authority to assign class schedules and office locations, and therefore to "infer from [the grievance remedy that] KCKCC is now bar[r]ed from ever making changes in class assignments or office assignments is an error."

The hearing officer found the reason for petitioner's termination articulated by the Board of Trustees was made in good faith; was rational, reasonable, and relevant to the Board's task; was supported by substantial evidence; and constituted good cause for termination. The hearing officer accordingly affirmed petitioner's termination.

Petitioner timely filed a notice of appeal and petition for judicial review. Following the submission of briefs and oral argument, the district court denied the petition for judicial review in an order filed December 30, 2008. The district court held the hearing officer's finding that petitioner was insubordinate in refusing to perform office hours at the Kansas City campus was reasonable and supported by substantial evidence.

## STANDARD OF REVIEW

This court's review of a hearing officer's decision pursuant to K.S.A. 72-5436 *et seq.* is made as if the appeal had been taken directly to this court. See *In re Due Process Hearing of McReynolds*, 273 Kan. 514, 517, 44 P.3d 391 (2002).

Review of the hearing officer's decision is limited to deciding if: (1) the decision was within the scope of the hearing officer's authority; (2) the decision was supported by substantial evidence; and

(3) the hearing officer did not act fraudulently, arbitrarily, or capriciously. 273 Kan. at 517. The reviewing court may not reweigh the evidence and substitute its judgment for that of the hearing officer. *U.S.D. No. 500 v. Robinson*, 262 Kan. 357, 361, 940 P.2d 1 (1997).

In making his or her decision, the hearing officer should be guided by three factors: (1) the school board has the burden of proof, (2) the board's reasons for termination must constitute good cause, and (3) the decision must be supported by substantial evidence. 262 Kan. at 361.

### SUBSTANTIAL EVIDENCE

On appeal, petitioner first argues the hearing officer's decision was not supported by substantial evidence. Specifically, petitioner asserts there was not substantial evidence supporting the following findings made by the hearing officer:

- petitioner's grievance remedy was limited to the 2006-2007 contract year;
- the provost's order to hold office hours on the Wyandotte campus was reasonable under the circumstances;
- petitioner refused to comply with the provost's order and was therefore insubordinate; and
- petitioner engaged in conflict instead of interacting as a professional.

Respondent contends the hearing officer's finding of good cause for termination based upon petitioner's insubordination in refusing to hold 5 office hours per week at the Kansas City campus during the fall 2007 semester was supported by substantial evidence.

"Substantial evidence" is evidence possessing both relevance and substance and which provides a substantial basis of fact from which the issues can reasonably be determined. *Evenson Trucking Co. v. Aranda*, 280 Kan. 821, 836, 127 P.3d 292 (2006). Put another way, "substantial evidence" is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. *Williams v. Lawton*, 288 Kan. 768, 803, 207 P.3d 1027 (2009).

Ultimately, petitioner's contention is that because petitioner won her grievance, she was entitled to keep her office location in Leav-

enworth until some point in the future when petitioner and KC-KCC may mutually decide to relocate petitioner's office.

KCKCC contends the provost has sole authority for determining faculty office location; the master contract required petitioner to provide 5 hours of on-ground office hours at the campus where petitioner taught; and the provost accordingly issued a reasonable order for petitioner to locate her office and conduct office hours at the Kansas City campus for the fall 2007 semester. Respondent further contends petitioner was insubordinate and thus her termination was justified.

Helpful to our analysis is to restate the grounds provided by the Board of Trustees for petitioner's termination:

"a) That Ruth J. Heflin was insubordinate by refusing to accept the reasonable and proper work assignment from her supervisor concerning the location of her office.

"b) Her office had been assigned at the main campus of Kansas City Kansas Community College, and according to the Master Contract, 'For those Professional Employees who teach online courses, no less that [sic] 50% of the required office hours (i.e. five hours per week) shall be held on campus.'

"c) In spite of repeated attempts on behalf of the Dean of Humanities and Fine Arts and the Provost to resolve the issue, Ruth Heflin blocked the channel of communication."

## REASONABLENESS OF PROVOST'S ORDER

Although the hearing officer found the petitioner's remedy was limited to the fall 2006-spring 2007 contract year, there is no indication in the master contract or the grievance that petitioner's remedy was actually limited to this period. However, while this finding by the hearing officer may have been technically incorrect, it does not necessarily undermine the hearing officer's findings supporting petitioner's termination. Although the petitioner's grievance remedy was not necessarily limited to one contract year, the grievance remedy did not establish that petitioner's office location was to be set at the Leavenworth campus in perpetuity, never to be changed. The hearing officer found: "To infer from [the grievance remedy that] KCKCC is now bar[r]ed from ever making changes in class assignment or office assignments is an error."

The KCKCC provost has the ultimate authority to assign faculty members to work locations. This authority is recognized by the KCKCC faculty association. At the hearing, petitioner was unable to cite any rule or provision supporting her belief that work locations could be changed only with the faculty member's consent.

KCKCC deans cannot assign faculty members to work locations, although they can send recommendations, or a faculty member's request as to work location, to the attention of the provost for consideration. In considering a requested work location, the provost examines the college-wide impact of the assignment, both financially and in relation to other faculty members. Clearly the purported agreement as to the Leavenworth office location underlying petitioner's grievance was made only between petitioner, her dean, and the Leavenworth campus director. We conclude the KCKCC provost had the authority to assign petitioner's work locations, even in light of petitioner's successful grievance.

Provost Ardebili determined that, in his best judgment, it was not necessary "at this point or in the near future to station any full-time faculty at Leavenworth center." Ardebili provided various reasons supporting this determination: The Leavenworth center is a single building with one-fifth of the students of the Kansas City campus; there are a variety of satellite facilities similar to the Leavenworth center; once a faculty member is stationed at the Leavenworth center, other faculty will want to be stationed at satellite centers close to their homes; all faculty activities, committees, assessment, in-services, and divisions are on the Kansas City campus; and full-time faculty are needed on the Kansas City campus. In light of these considerations, the provost determined he could not station petitioner at the Leavenworth center.

Importantly, the terms of the master contract require faculty who teach on-line courses to hold at least 5 office hours per week on campus. The hearing officer actually interpreted this provision to require faculty to hold 10 office hours unless they *only* teach on-line courses. However, the master contract does not include language limiting the required office hours this way, and the mutual understanding of the parties appears to be that the contract requires only 5 on-ground office hours if a faculty member teaches

*any* on-line course during a semester. As the hearing officer noted, this difference in interpretation does not really impact the resolution of the issues in this case, as the petitioner refused to hold even 5 office hours at the Kansas City campus per week. Under either interpretation of the master contract, because petitioner's only on-ground teaching assignment for the fall 2007 semester was at the Kansas City campus, it was ‘reasonable for the provost to direct petitioner serve the on-ground office hours required by the master contract at the Kansas City campus.

The evidence supports the hearing officer's determination the provost's order as to petitioner's office hours and office location was reasonable. There were reasonable grounds for the order, even in light of petitioner's successful grievance. The next question is whether there was substantial evidence supporting the finding petitioner refused to comply with the provost's order and was therefore insubordinate.

### PETITIONER'S INSUBORDINATION

Petitioner asserts she did not refuse to hold office hours at the main campus, but rather only refused to move petitioner's office to the main campus per her grievance remedy. Petitioner argues she reasonably offered to hold some of her office hours at the Kansas City campus.

"Insubordination" is defined as: "1. A willful disregard of an employer's instructions, esp. behavior that gives the employer cause to terminate a worker's employment. 2. An act of disobedience to proper authority; esp., a refusal to obey an order that a superior officer is authorized to give." Black's Law Dictionary 870 (9th ed. 2009). A single act of disobedience can constitute insubordination. See *Leaming v. U.S.D. No. 214*, 242 Kan. 743, 750 P.2d 1041 (1988); *Gaylord v. U.S.D. No. 218*, 14 Kan. App. 2d 462, 465-66, 794 P.2d 307 (1990).

Having concluded there was sufficient evidence the provost's order was reasonable, we further conclude there was sufficient evidence petitioner refused to comply with this order and so was insubordinate.

Petitioner freely admits she refused to move her office to the main campus, in compliance with the provost's order. As to petitioner's required on-ground office hours, petitioner contends she was in compliance with the master contract by offering to split these hours between the Kansas City and Leavenworth facilities, resulting in less than an hour of office hours per week at the Kansas City campus. Petitioner justified this offer as consistent with "past practice," but admitted such practice was not necessarily supported by the terms of the master contract.

More relevant for our analysis, however, is that petitioner's "offer" was contrary to the provost's directive to hold all on-ground office hours at the Kansas City campus. Petitioner's only on-ground class was at the Kansas City campus. Clearly, it was reasonable to expect petitioner to conduct her on-ground office hours at the Kansas City campus in order to be accessible to the students there.

We are firmly convinced there is substantial evidence petitioner directly refused to comply with the provost's reasonable order. Petitioner's refusal constituted insubordination.

## PETITIONER'S PROFESSIONALISM

Finally, petitioner argues there was not substantial evidence supporting the hearing officer's finding that petitioner "decided to engage in a conflict rather than interact as a professional." According to petitioner, she was just attempting to uphold her grievance remedy in the face of KCKCC's refusal to acknowledge her victory. Petitioner maintains she requested the dean and the provost contact her attorney in an "attempt to open discussions."

Respondent contends the hearing officer's finding of petitioner's insubordination was supported by petitioner's e-mail correspondence with KCKCC's administration.

Having already determined there was substantial evidence petitioner was insubordinate in refusing the provost's reasonable order regarding office hours and office location, our analysis suggests this isolated statement from the hearing officer's decision bears little significance for the resolution of this case. Whatever the petitioner's specific, subjective intent in refusing to comply with the

provost's order, the end result was that petitioner was insubordinate.

Nevertheless, the record reflects petitioner acted in an antagonistic manner toward her dean and the provost throughout the period in question. When Dean Agha-Jaffar requested that petitioner hold her office hours at the Kansas City campus, asking petitioner to think of the students' interests and showing there would be no additional burden, petitioner replied by implying the dean's order was a "direct Breach of Contract, which means we go directly to court." Petitioner then supplied her attorney's name and phone number. Petitioner's two subsequent responses to the dean and the provost were essentially, "Call my attorney."

As the hearing officer recognized, KCKCC did not help matters by its casual handling of petitioner's grievance and by then denying petitioner had prevailed on her grievance. However, petitioner's grievance victory did not provide petitioner with the authority to decide whether or not to follow her superior's orders. Rather than engaging in discussion and attempting to resolve the disagreement over her fall 2007 office location and office hours through dialogue with the administration, petitioner chose to stake her employment with KCKCC on her interpretations of the grievance and the nature of her remedy.

We are convinced there was substantial evidence supporting the hearing officer's finding that petitioner was insubordinate by refusing to comply with the provost's reasonable order.

## ARBITRARY OR CAPRICIOUS

Petitioner next argues the hearing officer's decision was arbitrary and capricious because the hearing officer found petitioner was insubordinate for reasons other than those given by the Board of Trustees in the notice of intent to terminate. The petitioner further argues the hearing officer's decision was arbitrary and capricious because the findings of insubordination were not supported by substantial evidence.

In the context of administrative law, an agency action is arbitrary and capricious if it is unreasonable or without foundation in fact.

See *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 970, 186 P.3d 829, *rev. denied* 286 Kan. 1176 (2008).

Petitioner's argument here is that the hearing officer's decision was unreasonable because the decision violated due process by relying on grounds other than those given by the Board of Trustees in the termination resolution. See *Haddock v. U.S.D. No. 462*, 233 Kan. 66, 78, 661 P.2d 368 (1983) (school board could not base decision to nonrenew teacher, made in the board's quasi-judicial capacity, on reasons differing from those given in notice to teacher); see also *Robinson*, 262 Kan. at 370-71 (due process requires teacher be given sufficient notice of reasons for nonrenewal so that teacher has a fair opportunity to respond at hearing).

Petitioner contends the "only expressed reason" given by the Board for terminating her contract was for refusing the order concerning the location of her office and, possibly, "allegedly blocking channels of communication." Petitioner contends the hearing officer instead relied on petitioner's refusal to hold office hours on the Kansas City campus.

Petitioner's argument is not supported by the record or by the hearing officer's decision. The communications between the parties leading to petitioner's termination and the three paragraphs set out by the Board of Trustees as its reasons for termination made clear one of the issues was petitioner's refusal to hold 5 office hours per week on the Kansas City campus. The hearing officer was not arbitrary or capricious in considering this issue.

Further, the hearing officer's decision clearly discussed the other two reasons for termination given by the Board of Trustees. The decision addressed petitioner's office location issue when the decision discussed the limits of petitioner's grievance as to this issue, and the decision addressed the blocking communication issue when finding petitioner's history of conflict, defiant attitude, and "refusal to even discuss the new circumstances."

The hearing officer found "that the reason for termination *articulated by the Board of Trustees* was made in good faith and is rational, reasonable and relevant to the Board's task of building up and maintaining an efficient school system." (Emphasis added.) The hearing officer then found "that the reason for termination is

supported by substantial evidence and constitutes good cause for termination of a tenured teacher."

The hearing officer properly reviewed and based his decision on the reasons for termination set forth by the Board of Trustees. We conclude the hearing officer's decision was not arbitrary or capricious.

Affirmed.